**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

*In re:*

BIONITROGEN HOLDINGS, CORP., et. al          Chapter 11

Case No.: 15-29505-BKC-RAM
Case No.: 15-29507-BKC-RAM
Case No.: 15-29509-BKC-RAM
Case No.: 15-29511-BKC-RAM
Case No.: 15-29512-BKC-RAM
Case No.: 15-29513-BKC-RAM
Case No.: 15-29515-BKC-RAM

_____Joint Debtors._____ /          (Jointly Administered)

**DEBTORS' EXPEDITED APPLICATION FOR ENTRY OF AN**
**ORDER: (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF BRENT**
**C. WILLIAMS AND THE FIRM OF TENEO SECURITIES LLC, AS FINANCIAL**
**ADVISORS AND INVESTMENT BANKERS TO THE DEBTORS *NUNC PRO TUNC***
**TO NOVEMBER 23, 2015; AND (II) APPROVING PROPOSED FEE STRUCTURE**

*(Preliminary Hearing requested on December 15, 2015)*

BIONITROGEN HOLDINGS, CORP, *et al.* ("BION" or "Debtor", or collectively, the "Joint Debtors"), by and through undersigned counsel and pursuant to Sections 327 and 328 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Rules"), respectfully requests the entry of an order of the Court authorizing the employment of Brent C. Williams ("Mr. Williams") and the firm of Teneo Securities LLC ("Teneo") to represent the Debtors as financial advisors and investment bankers in this case *nunc pro tunc* to November 23, 2015, (ii) approving Teneo's proposed fee structure and requesting a waiver of certain requirements under Rule 2016-1 of the Local Rules of the Bankruptcy Court for the Southern District of Florida (the "Local Rule(s)"), and (iii) other relief (the "Application"). In support of this Application, the Debtors rely on the *Affidavit of*

*Disinterestedness of Proposed Financial Advisors and Investment Bankers for the Debtors-in-Possession* (the "Williams Declaration") attached hereto as **Exhibit "A"**, and state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §157.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

2.      The statutory and legal predicates for the relief sought herein are sections 327 and 328 of the Bankruptcy Code and Rules 2014 and 2016 of the Rules.

## BACKGROUND

3.      On November 3, 2015 (the "Petition Date"), the above-captioned Joint Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      As of November 5, 2015, all cases are being jointly administered pursuant to this Court's *Order Granting Ex-Parte Motion for Order Authorizing and Directing the Joint Administration of Related Chapter 11 Cases* [ECF# 8] under the lead case "BioNitrogen Holdings, Corp.", Case No.: 15-29505-BKC-RAM.

5.      The Joint Debtors are operating their business and managing their affairs as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

6.      No trustee, examiner, or statutory committee has been appointed in these cases.

7.      For a more thorough account of the Joint Debtors' organizational background, business operations, and the events precipitating these chapter 11 filings, the Debtor respectfully refers the Court to the *Chapter 11 Case Management Summary* [ECF # 11].

## RELIEF REQUESTED

8.      Through this Application, the Debtors request that this Court enter an order: (i) authorizing the Debtors to retain and employ, pursuant to 11 U.S.C. §327(a) of the Bankruptcy

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

Code and Bankruptcy Rules 2014 and 2016, Teneo as their financial advisors and investment bankers, pursuant to the terms of the Teneo's Engagement Letter (the "Engagement Letter"), which is attached hereto as **Exhibit B,** (ii) approving the terms of the Engagement Letter, subject to the standards set forth in Section 328 of the Bankruptcy Code, and (iii) modifying the fee application and information requirements contained in Local Rule 2016-1 incorporating the Guidelines for Fee Applications for Professionals in the Southern District of Florida in Bankruptcy Cases.

## TENEO'S QUALIFICATIONS

9.        Teneo is well qualified to serve as the Debtors' investment banker. Teneo has considerable experience providing investment banking services to financially distressed companies. Teneo has received several accolades recognizing its work with distressed companies.  Teneo also has considerable experience providing financial advisory and investment banking services to companies in the bio-technology industry.  As such, the Debtors believe that Teneo is well qualified to assist and advise in matters relating to strategic disposition of all or certain of the Debtors' assets and/or merger and acquisition opportunities.

10.       The Debtors desire to retain the services of Teneo in these Chapter 11 cases pursuant to the terms of the Engagement Letter, and Teneo has agreed to perform such professional services pursuant to the Engagement Letter consistent with section 328 of the Bankruptcy Code.  The services to be rendered by Teneo are necessary and beneficial to the Debtors, their estates, and creditors. Teneo is familiar with the Debtors' business and financial practices and is therefore well suited and qualified to serve as a financial advisor for them in a cost-effective, efficient, and timely manner.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

## SERVICES TO BE RENDERED

11.     As set forth more fully in the Engagement Letter, the Debtors seek to retain Teneo as their exclusive financial advisor and investment banker in connection with one or more transactions involving the Debtors as follows:

a.  Identify or initiate, or both, potential M&A Transactions or Financings (as defined in the Engagement Letter);

b.  Review and analyze the Debtors' operations, assets, financial condition, business plan, strategy and operating forecasts;

c.  Evaluate the assets and liabilities of the Debtors and evaluate the Debtors' strategic and financial alternatives;

d.  Render financial advice and participate in meetings or negotiations with the Debtors' creditors and other stakeholders in connection with any M&A Transaction;

e.  Assist the Debtors in preparing descriptive material to be provided to potential parties to any Transaction;

f.  Assist the Debtors in the preparation of a teaser and confidential information memorandum;

g.  Contact potential purchasers or capital providers to solicit their interest in the Transaction and to provide them with the Confidential Information Memorandum under a confidential disclosure agreement to be approved by the Debtors;

h.  Participate in due diligence visits, meetings and consultations between the Debtors and interest potential purchasers and coordinate distribution of all information related to the Transaction with such parties;

i.  Assist the Debtors in developing, evaluating, structuring, negotiating the terms and conditions of a M&A Transaction or plan of reorganization; and

j.  Provide the Debtors with other appropriate general restructuring advice as the Debtors and their counsel deem appropriate and mutually agreed.

12.     It is critical that the Debtors employ Teneo to render the financial and investment banking services described above. The Debtors believe that the services will not duplicate the services that other professionals will be providing to the Debtors in these Chapter 11 cases. Specifically, Teneo will carry out unique functions and will use reasonable efforts to coordinate

4

with the Debtors and other professionals retained in these Chapter 11 cases to avoid unnecessary duplication of efforts. The investment banking services that Teneo will provide the Debtors are necessary to enable the Debtors to maximize the value of their estates.

## TERMS OF RETENTION

13.     As more fully described in the Engagement Letter, the Debtors and Teneo negotiated the arrangement of payment for services rendered by Teneo and the Debtors believe that the terms of the Engagement Letter are consistent with those of other similarly situated investment banking firms in Chapter 11 cases.

14.     The overall compensation structure described in the Engagement Letter is comparable to compensation generally charged by investment banking firms of similar stature to Teneo and for comparable engagements.  The Debtors believe that the restructuring expertise of Teneo's professionals as well as their bio-technology industry expertise, financing skills, and substantial mergers and acquisitions capabilities - some or all of which may be required by the Debtors during the term of Teneo's engagement - are important factors in determining the reasonableness of their fees.  Moreover, Teneo's expertise demonstrates that the ultimate benefit to the Debtors of Teneo's services cannot be measured solely by reference to the number of hours to be expended by Teneo's professionals.  Further, the times pressures of this case will require the devotion of substantial resources and may foreclose other opportunities for Teneo.

15.     To the best of the Debtors' knowledge, information and belief, no promises have been received by Teneo or any member, counsel or associate of Teneo, as to compensation in connection with these cases other than in accordance with the Engagement Letter and the Bankruptcy Code. To the best of the Debtors' knowledge, information and belief, Teneo has no

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

agreement with any other entity to share with such entity compensation received by Teneo in connection with these chapter 11 cases.

## COMPENSATION

16.    As more fully set forth in Section 3 of the Engagement Letter, the Debtors have agreed to pay Teneo a flat monthly fee of $10,000 commencing as of the date of the Engagement Letter (the "Monthly Fee"). The initial Monthly Fee shall be due and payable (i) upon execution and approval of the Engagement Letter and (ii) thereafter monthly in advance through the termination of the Engagement Letter. All Monthly Fees beginning with the third Monthly Fee paid to Teneo shall be credited, without duplication against any earned Completion Fee or Financing Fee (as defined below). However, if the Debtor does not consummate a transaction, then the Monthly Fees accrued by the Debtor shall become an administrative claim.

17.    In summary, the Debtors have agreed to pay Teneo the following transaction fees:

i.    Completion Fee: The Debtors shall pay Teneo a non-refundable cash fee in the amount of $200,000 upon confirmation of the Debtors' plan of reorganization (the "Completion Fee").

ii.    M&A Transaction Fee: If the Debtors announce, consummate or enter into an agreement with respect to one or more M&A Transactions during the term or this engagement, then the Debtors shall pay upon consummation a non-refundable cash fee (the "M&A Transaction Fee") equal to five percent (5%) of the amount of the aggregate M&A Transaction Value.

iii.    Financing Fees: If during the term of this engagement, the Debtors consummate a capital raising transaction (a "Financing Transaction"), then Teneo will be entitled to receive a non-refundable cash fee equal to three percent (3%) of the aggregate principal amount of any debtor in possession financing, plus three and one-half percent (3.5%) of the aggregate principal amount of any secured debt raised (excluding DIP financing) or committed, plus four and one-half percent (4.5%) of the aggregate principal amount of any unsecured debt or convertible debt raised or committed plus five and one half percent (5.5%) of the agreed value of any equity raised or committed.

iv.    Reduced Financing Fees: If a Financing Transaction is provided by certain entities named in the Engagement Letter, then the financing fees shall be revised

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

downward ("Reduced Financing Fee") to three percent (3%) of the aggregate principal amount of any DIP financing, plus one-half percent (0.5%) of the aggregate principal amount of any secured debt raised or committed, plus one and one half percent (1.5%) of the aggregate principal amount of any unsecured debt or convertible debt raised or committed plus two and one half percent (2.5%) of the agreed value of any equity raised or committed. Further, if Teneo raises less than 50% of the total Financing Transaction, then Teneo shall earn the Reduced Financing Fee.

18.     Teneo will also seek reimbursement for necessary expenses incurred, which shall include, but not be limited to travel expenses, virtual data room set up and maintenance, messenger service, computerized research, and other out-of-pocket expenses incurred in providing professional services.

## **INDEMNIFICATION**

19.     As more fully set forth in Section 5 of the Engagement Letter, as part of the overall compensation payable to Teneo under the terms of the Engagement Letter, the Debtors have agreed to indemnify and hold harmless Teneo, its affiliates and their respective officers, directors, employees, agents and each other entity or person, if any, controlling Teneo or any of its affiliates against certain losses, claims, damages, demands and liabilities, excluding any such losses, claim, demands, liabilities or damages arising from acts of willful misconduct or gross negligence.

20.     The Debtors submit that such indemnification is standard in the investment banking industry and that the provision of such indemnification by the Debtors is fair and reasonable for investment banking engagements. *See, e.g.*, *In re Fontainebleau Las Vegas Holdings, LLC, et al*., Case No. 09-21481 (Bankr. S.D. Fla. June 10, 2009); *In re TOUSA, Inc.,* Case No. 08-10928 (Bankr. S.D. Fla. Jan. 31, 2008).

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

21.     Accordingly, the Debtors respectfully submit that the terms of the indemnification of Teneo under the terms of the Engagement Letter are reasonable and customary and should be approved in these Chapter 11 cases.

**TENEO'S DISINTERESTEDNESS**

22.     In order to check and clear potential conflicts of interest in this Chapter 11 case, Teneo has searched its client databases to determine whether it had any relationships with the entities set forth in the Williams Declaration. To the best of the Debtors' knowledge, information and belief, other than in connection with these Chapter 11 cases, Teneo does not have any connection with the Debtors, their creditors, the United States Trustee or any other party with an actual or potential interests in these Chapter 11 cases, except as set forth in Exhibit B to the Williams Declaration. The Debtors have been advised that Teneo, an investment banking firm with broad activities, including general strategic advisory, mergers and acquisitions advisory, private equity investment, and financial restructuring advisory, has an international practice and may represent or may have represented certain of the Debtors' creditors, equity holders, or other parties in interest in matters completely unrelated to these cases.

23.     Despite the efforts described above to identify and disclose Teneo's connections with parties in interest in these Chapter 11 cases, because the Debtors are large enterprises with hundreds of investors, interest holders, creditors and other relationships, Teneo is unable to state with certainty that every client relationship or other connection has been disclosed.  The Debtors have been advised that Teneo will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new facts or circumstances are discovered, Teneo will supplement its disclosure to the Court.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

24.     As set forth in the Williams Declaration, there are no amounts owed by the Debtors to Teneo as of the Petition Date. Accordingly, Teneo is not a creditor of the Debtors.

25.     To the best of the Debtors' knowledge, information, and belief, and except and to the extent disclosed herein and in the Williams Declaration, based on the results of searches performed by Teneo to date, (a) Teneo is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and holds no interest adverse to the Debtors or their estates in connection with the matters for which Teneo is to be retained by the Debtors, as required by section 327(a) of the Bankruptcy Code; and (b) Teneo has no connection with the Debtors, their creditors, the U.S. Trustee, or other parties-in-interest in these Chapter 11 cases.

## BASIS FOR RELIEF REQUESTED

26.     Pursuant to section 327(a) of the Bankruptcy Code, a debtor-in-possession is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in carrying out [its] duties under [the Bankruptcy Code.]" Section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." Further, under section 328 of the Bankruptcy Code, a professional may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent fee basis."

27.     As required by Bankruptcy Rule 2014(a), this Application sets forth the following: (a) the specific facts showing the necessity for Teneo's employment, (b) the reasons

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

for the Debtors' selection of Teneo as their investment banker in connection with their Chapter 11 cases, (c) the professional services to be provided by Teneo, (d) the arrangement between the Debtors and Teneo with respect to Teneo's compensation, and (e) to the best of the Debtors' knowledge, the extent of Teneo's connections, if any, to certain parties in interest in these chapter 11 cases.

## APPROVAL OF ENGAGEMENT PURSUANT TO SECTION 328(A) OF THE BANKRUPTCY CODE

28.     In addition, given the numerous issues that Teneo may be required to address in the performance of the services hereunder, Teneo's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Teneo's services for engagements of this nature, the Debtors believe that the fee structure set forth in the Engagement Letter and above is reasonable under the standards set forth in Section 328 of the Bankruptcy Code.  Teneo also seeks approval of the fee structure pursuant to Section 328(a) of the Bankruptcy Code, which provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 of the Bankruptcy Code on any reasonable terms and conditions of employment, including a retainer, or on a contingent fee basis." 11 U.S.C. §328(a). Accordingly, Section 328(a) of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors, on flexible terms that reflect the nature of their services and market conditions.

29.     As recognized by numerous courts, Congress intended in section 328(a) of the Bankruptcy Code to enable debtors to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." *See Donaldson, Lufkin & Jenrette Sec.*

*Com. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.),* 123 F.3d 861, 862-63 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").  Recently, similar fee agreements have been approved in other large and complex cases. *See In re TOUSA, Inc*., Case No. 08-10928 (JKO) (Bankr. S.D. Fla. Aug. 27, 2008); *In re Arch Aluminum & Glass Co, Inc. et al*, Case No. 09-36232-BKC-JKO (Bank.S.D.Fla. December 28, 2009).

30.    The Debtors submit that the fee and expense structure and the indemnification and related provisions set forth in the Engagement Letter satisfy the above statutory criteria and are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. They appropriately reflect the nature of the services to be provided by Teneo and the fee structures and indemnification provisions typically utilized by Teneo and other leading financial advisory firms, which do not bill their clients on an hourly basis and generally are compensated on a transactional basis. In particular, the Debtors believe that the proposed fee structure creates a proper balance between fixed and contingency fees based on the successful consummation of relevant transactions.

## <u>MODIFICATION TO LOCAL RULE 2016-1</u>

31.    In addition, the Debtors are requesting to modify the fee application and information requirements contained in Local Rule 2016-1 incorporating the Guidelines for Fee Applications for Professionals in the Southern District of Florida in Bankruptcy Cases. Bankruptcy Rule 2016 and Local Rule 2016-1 require retained professionals to submit applications for payment of compensation in chapter 11 cases in accordance with the Guidelines for Fee Applications for Professionals in the Southern District of Florida in Bankruptcy Cases

11

(the "Guidelines").  Pursuant to Local Rule 2016-1(B)(1), the Guidelines apply in all chapter 11 cases and require retained professionals to submit detailed time entries that set forth, among other things: (i) a detailed description of each activity performed, (ii) the amount of time spent on that activity (in tenth of an hour increments), (iii) the subject matter of the activity, and (iv) the parties involved with the activity at issue. However, the Guidelines allow a retained professional to request a variance from these Guidelines, for cause. Based on Teneo's representations to the Debtors, it is the Debtors understanding that Teneo and other investment banking firms do not engage in the general practice of keeping detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis.

32.     The Debtors respectfully request that the requirements of the Guidelines be tailored to the nature of Teneo's engagement and its compensation structure. Teneo has requested, pursuant to 328(a) of the Bankruptcy Code, payment of a portion of its fees on a fixed monthly fee basis, which, as set forth above, is customary in the investment banking services industry. Further, the majority of Teneo's fee is contingent and predicated upon the closing of a Transaction. As such, the submission of detailed time entries, pursuant to the Guidelines, is unnecessary, and the Debtors request a modification of such reporting requirements.   The Debtors submit that the fee and expense structure and the indemnification and related provisions are reasonable terms and conditions of employment in light of (i) industry practice, (ii) market rates charged for comparable services both in and out of the Chapter 11 context, (iii) Teneo's substantial experience with respect to investment banking, and (iv) the nature and scope of work performed by Teneo in these Chapter 11 cases.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

## NO DUPLICATION OF SERVICES

33.     The Debtors intend that the services of Teneo will complement, and not duplicate, the services being rendered by other professionals in these Chapter 11 cases. Teneo understands that the Debtors have retained and may retain additional professionals during the term of the engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

**WHEREFORE**, the Debtors respectfully request the entry of an order authorizing the Debtors to: (i) employ and retain Teneo as the exclusive investment banker for the Debtors in accordance with the terms of the Engagement Letter, (ii) approving the terms of Teneo's employment, including the proposed fee structure and indemnification provisions set forth in the Engagement Letter, subject to the standards set forth in Section 328 of the Bankruptcy Code, (iii) modifying the fee application and information requirements contained in Local Rule 2016-1 incorporating the Guidelines for Fee Applications for Professionals in the Southern District of Florida in Bankruptcy Cases; and (iv) granting such other and further relief as is just and proper.

BIONITROGEN HOLDINGS, CORP.,

By: _____

Name:  Graham Copley

Title:    Chairman of the Board & CEO

EHRENSTEIN CHARBONNEAU CALDERIN
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case and via U.S. Mail or email upon all parties listed on the attached Service List on December 7, 2015.

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A)*

Respectfully submitted by:

EHRENSTEIN CHARBONNEAU CALDERIN
*Attorneys for the Debtors-in-Possession*
50 1 Brickell Key Drive, Third Floor
Miami, Florida 3 3131
T. 305.722.2002 F. 305.722.2001

By:     */s/Jacqueline Calderin*
        Jacqueline Calderin, Esq.
        Florida Bar Number 134414
        jc@ecclegal.com

AFS/IBEX
PO Box 650786
Dallas, TX 75265-0786

AMCREF Communtiy Capital, LLC
4118 Magazine Street
New Orleans, LA 70115-2751

Adam Friedman Associates, LLC
28 West 44th Street
New York, NY 10036-7402

Allister Batchen
PO Box 2057
Jupiter, FL 33468-2057

Annon Consulting, Inc.
c/o ... Law ... A.
1 ... Gl ... te 355
Boca Raton, FL 33431-8548

E-Mail

BGroup, LLC
400 S. Ocean Blvd. #405
Palm Beach, FL 33480-4469

Baker & O'Brien
12001 N. Central Expressway
Suite 1200
Dallas, TX 75243-3850

Broad & Cassel
390 North Orange Avenue
Suite 1400
Orlando, FL 32801-1687

Broadridge ICS
PO Box 416423
Boston, MA 02241-6423

CT Corporation
PO Box 4349
Carol Stream, IL 60197-4349

Carlos Contreras
1045 Ibis Avenue
Miami, FL 33166-3213

Carr, Riggs & Ingram, LLC
1713 Mahan Drive
Tallahassee, FL 32308-1219

Comcast
PO Box 105184
Atlanta, GA 30348-5184

DCR Network, LLC
5220 NW 72 Avenue
Suite 11
Miami, FL 33166-4858

DEX Imaging
PO Box 17299
Clearwater, FL 33762-0299

Devine Goodman Rasco, PA
2800 Ponce De Leon Blvd.
#1400
Miami, FL 33134-6921

Discount EDGAR
125 Wolf Road, Suite 315
Albany, NY 12205-1221

Ernesto Iznaga
14 ... Lane
J ... ter ... 0

E-Mail

Federal Express
PO Box 660481
Dallas, TX 75266-0481

Florida Departement of Revenue
5050 W. Tennessee Street
Tallahassee, FL 32399-0110

Florida Department of Revenue
5050 W Tennessee Street
Tallahassee, FL 32399-0100

Focused Accounting Solutions
289 Berenger Walk
Wellington, FL 33414-4347

Frederick M. Lehrer, PA
Frederick M. Lehrer, Esq.
285 Uptown Rd, 402
Altamonte Springs, FL 32701-3499

Fredy Pedroza
3970 NW 177 Street
Opa Locka, FL 33055-3854

Gable Gotwals
1100 ONEOK Plaza
100 West 5th Street
Tulsa, OK 74103-4279

Gene Hudson Partners Inc.
71 Humbervale Boulevard
Etobicoke, Ontario, Canada
M8Y 3P5

Glenn's Greenery
10900 SW 48th Street
Fort Lauderdale, FL 33328-3210

Holland & Knight
PO Box 884084
Orlando, FL 32886-0001

Honorable Anne M. Gannon, CFC
Palm Beach County Tax Collector
PO Box 3715
West Palm Beach, FL 33402-3715

INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY
OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346preferred

J. Steven Southwell, PA
PO Box 1748
Wauchula, FL 33873-1748

Jackson & Jackson
111 Founders Drive, Suite 400
Baton Rouge, LA 70810-8959

James Clavijo
1919 Van Buren Street, Suite 403
Hollywood , Florida 33020

Kaufman Rossin & Co
2699 S. Bayshore Drive
Miami, FL 33133-5486

Kimley-Horn and Associates, Inc.
PO Box 932520
Atlanta, GA 31193-2520

Legal & Compliance, LLC
330 Clematis Street #217
West Palm Beach, FL 33401-4602

Lesley Hollenbeck
4122 Parkside Drive
Jupiter, FL 33458-8701

Lucas Granillo Ocampo
Av. Del Libertador 498, 23 Piso
Ciudad de Buenos Aires
Argentina
Argentina

Mallah Furman, CPA
Joe S. Berkovits
6700 Andrews Avenue, Suite 404
Fort Lauderdale, FL 33309-2165

Marlins Business Bank
PO Box 13604
Philadelphia, PA 19101-3604

Miami Dade County Tax Collector
140 W. Flagler St
#1403
Miami, FL 33130-1561

NABUCCO Consulting
400 S Ocean Blvd., #405
Palm Beach, FL 33480-4469

New Jersey Division of Revenue
Attn: Annual Report Review Unit
PO Box 302
Trenton, NJ 08646-0302

Office Max
PO Box 101705
Atlanta, GA 30392-1705

Office of the US Trustee
51 W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Old Monmouth Stock Transfer Co., Inc.
200 Memorial Pkwy
Atlantic Highlands, NJ 07716-1655

PC LAN Techs
325 S. Olive Ave.
West Palm Beach, FL 33401-5619

Paychex TPS
301 N. Cattlemen Road, Suite 205
Sarasota, FL 34232-6437

Pentant, LLC
2055 Washington Blvd
First Floor Stamford
Stamford, CT 06901-2216

Polsinelli
100 South Fourth Street
Suite 1000
Saint Louis, MO 63102-1825

Microsoft
One Microsoft Way
Redmond WA 98052

Renew Energy
Mullligrode DE-3-5
DK-2570
Denmark

Robert Friedman
Olympic 1401 Elm Associates, LLC
1505 Federal Street
Dallas, TX 75201-3487

Ron Fussman
85 Broad Rd
Illsboro Est 33334

Smart Choice, CPA
Jorge Coto
3721 SW 133 Place
Miami, FL 33175-6938

Todojama, LLC
2545 N Lemer
Miami FL 33100

Todojama, LLC
201 N Lake Larry Ave.
Miami, 33 6 109

U.S. Securities and Exchange
Commission
100 F Street
Washington, DC 20549-2001

U.S. Securities and Exchange
Commission
Miami Regional Office
801 Brickell Avenue, Suite 1800
Atten: Eric I. Bustillo, Regio

U.S. Securities and Exchange
Commission
Office of Reorganization
950 East Paces Ferry Road, Suite 900
Atlanta, GA 30326-1382

Wolin Associates
420 S. Marion Pkwy Suite 1402
Denver, CO 80209-2549

Jacqueline Calderin Esq.


Nicole M Grimal


AMCREF Fund XXI, LLC
c/o AMCREF Communtiy Capital, LLC
4118 Magazine Street
New Orleans, LA 70115-2751

Internal Revenue Service
7850 SW 6 Court
Mail Stop 5730
Fort Lauderdale, FL 33324

Florida Power & Light
General Mail Facility
Miami, Florida 33188-0001

Secretary of the State
Uniform Commercial Code
1019 Brazos
Austin, TX 78701-2413

Delaware Entity
1209 Orange Street
Wilmington, DE 19801-1120

Community & Southern Bank
3333 Riverwood Pkwy SE
Suite 350
Atlanta, GA 30339-3304

Enhanced Capital New Market Dev.
c/o Enhanced Community Dev., LLC
201 St. Charles Avenue, Suite 3700
New Orleans, LA 70170-3700

John B. Hutton III, Esq.
GREENBERG TRAURIG, P.A.

Miami, FL 33131

John R. Dodd, Esq.
GREENBERG TRAURIG P.A.

Miami, FL 33131

Taylor County Development Authority
Attn: Scott Frederick
103 E. Ellis St. Perry, Florida 32348

World Global Financing, Inc.
141 NE 3rd Ave, Floor 12
Miami FL 33132

XOffices
8300 NW 53rd Street
Suite 350
Miami FL 33166

Ernesto Iznaga
147 Key Lane
Jupiter

Exhibit "A"

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
### www.flsb.uscourts.gov

*In re:*

BIONITROGEN HOLDINGS, CORP.                      Chapter 11

                                                 Case No.: 15-29505-BKC-RAM
                                                 Case No.: 15-29507-BKC-RAM
                                                 Case No.: 15-29509-BKC-RAM
                                                 Case No.: 15-29511-BKC-RAM
                                                 Case No.: 15-29512-BKC-RAM
                                                 Case No.: 15-29513-BKC-RAM
                                                 Case No.: 15-29515-BKC-RAM

_____Joint Debtors._____ /             (Jointly Administered)

### AFFIDAVIT OF DISINTERESTEDNESS OF PROPOSED FINANCIAL ADVISORS AND INVESTMENT BANKERS FOR THE DEBTORS-IN-POSSESSION

STATE OF NEW YORK                 )
                                  ) SS:
COUNTY OF NEW YORK                )

**BEFORE ME**, the undersigned authority, personally appeared BRENT C. WILLIAMS in New York, New York, who after being duly sworn, deposes and says as follows:

1.      I am a Senior Managing Director of the Firm of Teneo Securities LLC. ("Teneo"), with offices located at 601 Lexington Avenue, Floor 45, New York, NY 10022.  I am familiar with the matters set forth herein and make this Affidavit in support of the *Debtors' Application For Entry of an Order: (I) Authorizing The Retention and Employment of Brent C. Williams and the Firm of Teneo Securities LLC, as Financial Advisors and Investment Bankers to the Debtors Nunc Pro Tunc to November 23, 2015; and (II) Approving Proposed Fee Structure* (the

"Application")[1].  Additionally, I am a Certified Public Accountant, and current member of the Canadian Institute of Chartered Accountants.

2.      The purpose of this Declaration is to provide the disclosures required under Section 327(a) of the Bankruptcy Code as necessary to a finding that Teneo qualifies as a "disinterested person" as defined in Section 101(14) of the Bankruptcy Code.  Consistent with Federal Rule of Bankruptcy Procedure 2014(a) and the Local Rules of this Court, this Declaration is intended as a verified statement setting forth to the best of my knowledge, all of Teneo's connections with the Debtors, their professionals, other parties-in-interest, and their professionals in this case.  In the event that additional connections within the scope of the foregoing Rules are discovered during the pendency of this case, Teneo will undertake to file supplementary disclosures as may become appropriate.  In addition, this Affidavit sets forth Teneo's qualifications to serve as financial advisors to the Debtors.

## **TENEO's Qualifications to Serve as Financial Advisors to the Debtors**

3.      For more than twenty-three years, I have provided financial advisory services to companies experiencing financial difficulties and have served as a financial advisor, investment banker, and provided forensic accounting services in dozens of bankruptcy cases, including AES Technologies, Atari Inc., BHM Corporation, Comprehensive Clinical Development, Dura Automotive, Encompass Services Corp., Focal Communications, Global Power Equipment Group, Hear USA, Humboldt Creamery, Idearc Corp., Intermet Corp., KV Pharmaceutical, MMFX Technologies, Motor Coach Industries, Omtron USA, Patriot Coal, Real Mex Restaurants, Seahawk Drilling, SK Foods, Song Networks, Stelco Inc., Touch America, Truvo Group, Visteon Corp., and Washington Group International, among several others. I have deep experience in investment banking, crisis management, and business reorganizations, including in

---

[1] All capitalized terms not otherwise defined herein shall have the meaning attributed to them in the Application.

the areas of financial restructuring, asset sales, in- and out-of-court restructuring, forensic and general accounting, and litigation support, among others.  Moreover, I am a former Bankruptcy Trustee in the Province of Ontario.

**Teneo's Proposed Services Performed for the Debtors**

4.       Upon retention, Teneo will work at the direction of the Debtors to:

  i.   Identify or initiate, or both, potential M&A Transactions or Financings;

  ii.  Review and analyze the Debtors' operations, assets, financial condition, business plan, strategy and operating forecasts;

  iii. Evaluate the assets and liabilities of the Debtors and evaluate the Debtors' strategic and financial alternatives;

  iv.  Render financial advice and participate in meetings or negotiations with the Debtors' creditors and other stakeholders in connection with any M&A Transaction;

  v.   Assist the Debtors in preparing descriptive material to be provided to potential parties to any Transaction;

  vi.  Assist the Debtors in the preparation of a teaser and confidential information memorandum;

  vii. Contact potential purchasers or capital providers to solicit their interest in the Transaction and to provide them with the Confidential Information Memorandum under a confidential disclosure agreement to be approved by the Debtors;

  viii. Participate in due diligence visits, meetings and consultations between the Debtors and interest potential purchasers and coordinate distribution of all information related to the Transaction with such parties;

  ix.  Assist the Debtors in developing, evaluating, structuring, negotiating the terms and conditions of a M&A Transaction or plan of reorganization; and

  x.   Provide the Debtors with other appropriate general restructuring advice as the Debtors and their counsel deem appropriate and mutually agreed.

5.       Subject to the Court's approval of the Application, Teneo is willing to serve as the Debtors' investment bankers and financial advisors to perform the services described above.

### Teneo's Disinterestedness

6.      As more fully described below, Teneo and certain of its professionals – including managing directors, directors, vice presidents, associates, and analysts – may have been retained in the past, may represent presently, and/or have connections with certain of the Debtors' creditors, professionals, or parties in interest, and their professionals in this case. In all of the circumstances described, the matters have been and remain wholly and entirely unrelated to the representation of the Debtors and do not impair Teneo's disinterestedness in this case or impair its ability to serve the Debtors.

7.      Based upon information supplied by the Debtors, Teneo (i) searched its records and conflict check system and (ii) disseminated a written request for information to all of the professionals in its firm to identify any connection or relationship with the following entities, among others:

   a.   The Debtors;

   b.   The Debtors' officers and directors;

   c.   The equity shareholders known to own more than five percent (5.0%) of outstanding stock of the Debtors; and

   d.   The Debtors' twenty largest unsecured creditors;

A comprehensive list of the names provided to Teneo by the Debtors and searched against Teneo's database is set forth in **Schedule "1"** attached hereto and incorporated herein by reference.  The names appearing on this list were manually reviewed to identify any matters on which work was performed in the past seven years.

8.      Teneo has in the past represented, currently represents, or has connections with the persons and entities set forth on attached **Schedule "2"** within the scope of Federal Rule of Bankruptcy Procedure 2014(a). Exhibit B sets forth those persons and entities (i) currently

4

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

represented by Teneo, (ii) recently (within the last 3 years) or currently represented by Teneo, (iii) professional firms involved in the case with whom or against whom Teneo recently worked or works (within the last 3 years), and (iv) those entities and parties in interest for whom Teneo recently served as a financial advisor or investment banker. In each instance and for each category of representation or connection disclosed on Exhibit B, Teneo's connection to that party or representation to that party was or is wholly unrelated to this case. In each category of representation or connection in unrelated matters disclosed on Exhibit B, Teneo's connection to that party does not and will not impair Teneo's representation of the Debtors.

9.    None of the matters on which Teneo consulted with the foregoing entities and professionals identified in paragraph 9 involved the Debtors or their related entities. Based upon the database search described above, Teneo does not represent any other entity having an adverse interest in connection with the case, and does not hold or represent an interest adverse to the estate with respect to the matters on which Teneo will be employed in accordance with Section 327(a) of the Bankruptcy Code.

10.    Neither Teneo nor I represent any interest adverse to the Debtors, their creditors, the known equity security holders, the known parties in interest, or the Estates more generally, and we are "disinterested persons" as required by 11 U.S.C. § 327(a) and as defined by 11 U.S.C. § 101(14).

11.    To the best of my knowledge, except as set forth herein, (a) Teneo has no connections with the Debtors, creditors, any other party in interest, or their respective attorneys and financial advisors; and (b) the Teneo professionals working on this matter are not relatives of the United States Trustee of the Southern District of Florida or of any known employee in the

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

office thereof, or any United States Bankruptcy Judge for the Southern District of Florida as required by Fed.R.Bank.P. 2014.

12.     Neither Teneo nor I will represent any other entity in connection with this case and neither I nor the firm will accept any fee from any other party or parties in this case, except from the estate, unless otherwise authorized by the Court.  As part of its regular practice, Teneo appears in many cases, proceedings, restructurings, and transactions involving many different entities, debtors, committees, law firms, financial consultants, and investment bankers in matters unrelated to this case.  However, Teneo will not provide any professional services to any of the individual creditors, other parties in interest, or their respective attorneys and accountants with regard to any matter related to this chapter 11 case.

<u>**Compensation**</u>

13.     The professional fees and costs incurred by Teneo in the course of its representation of the Debtors shall be subject in all respects to the application and notice requirements of 11 U.S.C. §§ 330 and 331 and F.R.B.P. 2014 and  2016.

14.     Teneo has agreed to be compensated as fully set forth in the Engagement Letter attached hereto as **Exhibit "B"**.  As set forth in the Engagement Letter, the Debtors shall pay Teneo the following for its services:

> i.  <u>Monthly Fee:</u> The Debtors shall pay Teneo a flat monthly fee of $10,000 commencing as of the date of the Engagement Letter (the "Monthly Fee"). The initial Monthly Fee shall be due and payable (i) upon execution and approval of the Engagement Letter and (ii) thereafter monthly in advance through the termination of the Engagement Letter. All Monthly Fees beginning with the third Monthly Fee paid to Teneo shall be credited, without duplication against any earned Completion Fee or Financing Fee (as defined below). However, if the Debtor does not consummate a transaction, then the Monthly Fees accrued by the Debtor shall become an administrative claim.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

ii. <u>Completion Fee:</u> The Debtors shall pay Teneo a non-refundable cash fee in the amount of $200,000, upon confirmation of the Debtors' plan of reorganization (the "<u>Completion Fee</u>").

iii. <u>M&A Transaction Fee:</u> If the Debtors announce, consummate or enter into an agreement with respect to one or more M&A Transactions during the term or this engagement, then the Debtors shall pay upon consummation a non-refundable cash fee (the "<u>M&A Transaction Fee</u>") equal to five percent (5%) of the amount of the aggregate M&A Transaction Value.

iv. <u>Financing Fees:</u> If during the term of this engagement, the Debtors consummate a capital raising transaction (a "<u>Financing Transaction</u>"), then Teneo will be entitled to receive a non-refundable cash fee equal to three percent (3%) of the aggregate principal amount of any debtor in possession financing, plus three and one-half percent (3.5%) of the aggregate principal amount of any secured debt raised (excluding DIP financing) or committed, plus four and one-half percent (4.5%) of the aggregate principal amount of any unsecured debt or convertible debt raised or committed plus five and one half percent (5.5%) of the agreed value of any equity raised or committed.

v. <u>Reduced Financing Fees:</u> If a Financing Transaction is provided by certain entities named in the Engagement Letter, then the financing fees shall be revised downward ("<u>Reduced Financing Fee</u>") to three percent (3%) of the aggregate principal amount of any DIP financing, plus one-half percent (0.5%) of the aggregate principal amount of any secured debt raised or committed, plus one and one half percent (1.5%) of the aggregate principal amount of any unsecured debt or convertible debt raised or committed plus two and one half percent (2.5%) of the agreed value of any equity raised or committed. Further, if Teneo raises less than 50% of the total Financing Transaction, then Teneo shall earn the Reduced Financing Fee.

15.    Teneo will also seek reimbursement for necessary expenses incurred, which shall include, but not be limited to travel expenses, virtual data room set up and maintenance, messenger service, computerized research, and other out-of-pocket expenses incurred in providing professional services.

16.    There is no agreement of any nature, other than the shareholder agreement of our firm, as to the sharing of any compensation to be paid to the firm.  No promises have been

received by Teneo, nor any member, or associate thereof, as to the compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

17.    Teneo intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in this Chapter 11 case in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the Southern District of Florida, and the orders of the Court, including any order setting procedures for interim and final compensation.

## **Indemnification**

18.    Pursuant to the terms of the Engagement Letter, the Debtors shall provide indemnification and other obligations set forth in Section 5 of the Engagement Letter, which is hereby incorporated by reference.  Further, in the event that an Indemnified Person (as defined in Section 1) is requested or required to appear as a witness in any action brought by or on behalf of or against the Debtors or which otherwise relates to the Engagement Letter or the services rendered by Teneo to the Debtors, the Debtors shall reimburse Teneo and the Indemnified Person for all reasonable expenses incurred by them in connection with such Indemnified Person appearing and preparing to appear as such a witness, including without limitation, the reasonable fees and disbursements of legal counsel.

19.    I have read the Application, and to the best of my knowledge, information, and belief, the contents of the Application are true and correct.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

20.     This concludes my declaration.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE
AND CORRECT TO THE BEST OF MY KNOWLEDGE.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
                                        Brent C. Williams

**SWORN TO AND SUBSCRIBED** before me this **4** day of December 2015.

_____
NOTARY PUBLIC STATE OF NEW
YORK AT LARGE

NOTARY PUBLIC, STATE OF NEW YORK

Print Name: _Yvonne C. Gonzalez_

Commission No.: _01GO6284160_

My Commission Expires: _June 17, 2017_

YVONNE COLON GONZALEZ
Notary Public, State of New York
No. 01GO6284160
Qualified in New York County
Commission Expires June 17, 2017

9
**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

**Schedule "1"**

**Teneo's Rule 2014 Disclosure**

**NONE**

**Schedule "2"**

**Teneo's Relationship Disclosure**

**NONE**

**Exhibit "B"**

**Engagement Letter**

 **Teneo**

**ENGAGEMENT LETTER**

November 23, 2015

**Privileged and Confidential**

Graham Copley
Chief Executive Officer
BioNitrogen Holdings Corp.
8300 NW 53 Street, Suite 350
Doral, FL 33166

Dear Mr. Copley:

This letter agreement confirms the understanding and agreement by and between Teneo Securities LLC, a Delaware limited liability company ("**Teneo**"), and BioNitrogen Holdings, Corp., a Florida corporation and its respective controlled subsidiaries (collectively with any entity formed or used for the purpose set forth herein, the "**Company**").  Teneo acknowledges and agrees that this agreement and the indemnification and other provisions attached hereto as Schedule 1 and incorporated herein (collectively, the "**Agreement**") may be subject to Bankruptcy Court (as defined herein) approval and the terms of the order of  the Bankruptcy Court approving Teneo's retention if the Company determines to commence Chapter 11 cases.

1)    **Engagement**. In connection with the formulation, analysis and implementation of various options of restructuring, reorganization or other strategic alternative relating to the Company, whether pursuant to an M&A Transaction (as defined herein), Financing (as defined herein) or any series or combination of M&A Transactions, Financings, or both, Teneo will perform the following services to the extent Teneo deems necessary, appropriate and feasible and as requested by the Company:

   a)   Identify or initiate, or both, potential M&A Transactions or Financings;

   b)   Review and analyze the Company's operations, assets, financial condition, business plan, strategy and operating forecasts;

   c)   Evaluate the assets and liabilities of the Company and evaluate the Company's strategic and financial alternatives;

   d)   Render financial advice and participate in meetings or negotiations with the Company's creditors and other stakeholders in connection with any M&A Transaction (as defined herein);

   e)   Assist the Company in preparing descriptive material to be provided to potential parties to a M&A Transaction;

   f)   Assist the Company in the preparation of a teaser and confidential information memorandum (the

1 | **TENEO** Engagement Letter – BioNitrogen

"*Confidential Information Memorandum*") and a summary by the Company;

g) Contact potential purchasers or capital providers to solicit their interest in the M&A Transaction and to provide them with the Confidential Information Memorandum under a confidential disclosure agreement to be approved by the Company;

h) Participate in due diligence visits, meetings, and consultations between the Company and interested potential parties and coordinate distribution of all information related to the M&A Transaction with such parties;

i) Assist the Company in developing, evaluating, structuring and negotiating the terms and conditions of a M&A Transaction or plan of reorganization;

j) Provide the Company with other appropriate general restructuring advice as the Company and its counsel deem appropriate and mutually agreed.

The services and compensation arrangements set forth herein do not encompass any other investment banking or financial advisory services not set forth in this paragraph 1. Notwithstanding anything contained in this Agreement to the Contrary, Teneo shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity. Teneo makes no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a plan of reorganization, M&A Transaction or Financing Transaction.

2)    **Term and Termination.** This Agreement shall commence upon the date first written above and shall continue unless either party gives 30 days prior written notice of termination to the other party. Upon any termination, the provisions of Paragraph 3 (to the extent applicable) shall survive the termination of this Agreement to the extent such provisions relate to the payment of fees due on or before the effective date of termination; provided, however, that in the event of any termination of Teneo's engagement hereunder by the Company, Teneo will continue to be entitled to the full amount of any applicable M&A Transaction Fees or Financing Fees (as defined herein) provided for herein in the event that any time prior to the expiration of 12 months after the date of any such termination (the "*Tail Period*") the Company consummates, or enters into an agreement providing for, any ultimately successful M&A Transactions or Financing Transactions. The provisions of Paragraphs 2, 3, 5, 6, 7, 8, 9, 11, 12 and 13 shall survive the termination of this Agreement and shall remain in effect.

3)    **Fees and Expenses.** All fees and expenses hereunder shall be paid subject to application for and allowance by the Bankruptcy Court.

a) Monthly Fee: The Company shall pay Teneo a monthly cash fee of $10,000 commencing on the date first written above, (the "*Monthly Fee*"). The initial Monthly Fee shall be due and payable (i) upon execution of this Agreement and (ii) thereafter monthly in advance through the termination of this Agreement in accordance with Section 2 hereof. All Monthly Fees beginning with the third (3rd) Monthly Fee paid to Teneo shall be credited, without duplication, against any Completion Fee or Financing Fee. However, if the Company does not consummate a Financing Transaction, the

Monthly Fees and expenses accrued by the Company shall become an administrative claim under the Bankruptcy Code, if applicable.

b) **Transaction Fee(s):** The Company shall pay Teneo the following transaction fee(s):

   i) Completion Fee: The Company shall pay Teneo a non-refundable cash fee equal to $200,000, payable upon the confirmation of a plan of reorganization of the Company (the "***Completion Fee***").

   ii) M&A Transaction Fee: If the Company announces, consummates or enters into an agreement with respect to one or more M&A Transactions during the term of this engagement or within the Tail Period, then the Company shall pay Teneo, immediately upon consummation, a non-refundable cash fee (the "***M&A Transaction Fee***") equal to five percent (5.0%) of the amount of the aggregate M&A Transaction Value (as defined herein).

   iii) Financing Fees: In addition to the foregoing fees, if during the term of this engagement or within the Tail Period, the Company consummates a capital raising transaction (whether through a sale of securities, financing placement, arrangement of loans or otherwise) (a "***Financing Transaction***"), then Teneo will be entitled to receive upon the first and any subsequent closing of the sale of any securities or financing placement or arrangement of loans or other such transaction a non-refundable cash fee (such fees collectively, the "***Financing Fee***") equal to: three percent (3.0%) of the aggregate principal amount (measured at face amount) of any debtor-in-possession financing, plus three and one-half percent (3.5%) of the aggregate principal amount (measured at face amount) of any secured debt raised (excluding debtor-in-possession financing and convertible securities) or committed, plus four and one-half percent (4.5%) of the aggregate principal amount (measured at face amount) of any unsecured debt or convertible debt raised or committed plus five and one-half percent (5.5%) of the agreed value of any equity (preferred or common) raised or committed.

   However, if a Financing Transaction is provided by Air Liquide, Stamicarbon, Foster Wheeler, or Ameropa (and including their respective controlled subsidiaries) then the ***Financing Fee*** shall be revised downward ("***Reduced Financing Fee***") and equal to the following: three percent (3.0%) of the aggregate principal amount (measured at face amount) of any debtor-in-possession financing, plus one-half percent (0.5%) of the aggregate principal amount (measured at face amount) of any secured debt raised (excluding debtor-in-possession financing and convertible securities) or committed, plus one and one-half percent (1.5%) of the aggregate principal amount (measured at face amount) of any unsecured debt or convertible debt raised or committed plus two and one-half percent (2.5%) of the agreed value of any equity (preferred or common) raised or committed.

   Further, if Teneo raises less than 50% of the total Financing Transaction, then Teneo shall earn the ***Reduced Financing Fee***.

c) **Expenses:** Teneo shall be entitled to monthly reimbursement of reasonable documented out-of-pocket expenses incurred in connection with the services to be provided under this Agreement. Out-of-

pocket expenses shall include, but not be limited to all reasonable documented travel expenses, meals, computer and research charges, virtual dataroom set-up and maintenance, reasonable documented outside attorney fees (including, without limitation, engagement documentation and similar pleadings by outside counsel), messenger services and long-distance telephone calls incurred by Teneo in connection with the services to be provided to the Company. If a bankruptcy case is commenced, consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse Teneo for such expenses under this Section 3(d) upon presentation of an invoice or other similar documentation with reasonable detail. If a bankruptcy case is commenced, it is understood that Teneo's reimbursable counsel fees may include, without limitation, fees incurred in representing Teneo's interests during pendency and following the conclusion of any bankruptcy case, including, without limitation, counsel fees incurred in connection with Teneo's retention and payment hereunder.

d)      No Third Party Fees: No fee payable to any third party, by the Company, or any other person or entity, shall reduce or otherwise affect any fee payable hereunder to Teneo.

"**M&A Transaction**" means any sale, disposition, or other business transaction or series of transactions involving at least a majority of the equity or assets of one or more entities comprising the Company, whether directly or indirectly and through any form of transaction, including without limitation, merger, reverse merger, liquidation, stock purchase, asset purchase, recapitalization, reorganization, consolidation, combination, amalgamation, a sale under section 363 of the Bankruptcy Code (and including under a prepackaged or pre-negotiated plan of reorganization or other plan pursuant to the Bankruptcy Code), joint venture or other transaction.

"**Financing Transaction**" means a private or public placement of securities of the Company in one or more related transactions, to one or more investors or sources of financing, in the form of debt securities (including bank debt and any debtor-in-possession financing), common stock, convertible preferred stock, convertible debt securities, preferred stock, equity-linked securities, equity or equity-linked joint ventures or other equity or equity-linked arrangements.

For the purpose of calculating a M&A Transaction Fee for an M&A Transaction, the "**M&A Transaction Value**" shall include, without limitation: (i) all cash, notes, securities and other property (whether tangible or intangible) paid, payable, delivered or deliverable, as the case may be (whether pursuant to any escrow or hold back, installment or earn-out, non-compete agreement, consulting agreement or otherwise), by the purchaser(s) or its affiliates to the Company or its security holders (including holders of the Company's or any of its subsidiaries' common equity, preferred equity, options or warrants) in connection with such M&A Transaction; (ii) the principal amount of all liabilities of the Company and its subsidiaries, including, without limitation, all indebtedness, pension and other post-retirement liabilities and guarantees of the Company or its subsidiaries outstanding as of the closing date of such M&A Transaction or directly or indirectly assumed, refinanced, consolidated or extinguished in connection therewith; and (iii) the amount of extraordinary dividends or distributions paid or payable to the Company's equity holders or any of its subsidiaries' minority equity holders in connection with such M&A Transaction; plus in the case of a joint venture or similar transaction (a "**Joint Venture**"), the aggregate value of the proceeds, assets, businesses or other consideration contributed or to be contributed to the Joint Venture by all parties (or the respective owners or designees thereof) to such Joint Venture in connection with the M&A Transaction (which shall be deemed to

include up-front payments, milestone payments, research and development payments, licensing fees and royalties, installment amounts, future and contingent payments and other payments), including, without limitation, cash, notes, securities, intellectual property, licenses, marketing or distribution rights and other property and the amount of any liabilities assumed by such Joint Venture. For the purposes of computing M&A Transaction Value hereunder, (w) publicly traded securities shall be valued at the average of their closing prices (as reported in the Wall Street Journal or other reputable source reasonably designated by Teneo if the Wall Street Journal does not publish such closing prices) for the five trading days prior to the closing of the M&A Transaction, (x) options shall be valued using the treasury stock method without giving effect to tax implications, and (y) any other non-cash consideration shall be valued at the fair market value thereof as determined in good faith by Teneo and the Company.

4)    **Company Information**. The Company recognizes and confirms that in rendering services hereunder, Teneo will be using and relying on, and assuming the accuracy of, without any independent verification, data, material and other information (collectively, the "***Information***") furnished to Teneo by or on behalf of the Company or other third parties (including their agents, counsel, employees and representatives). The Company understands that Teneo will not be responsible for independently verifying the accuracy of the Information provided to Teneo and shall not be liable for inaccuracies in any such Information. Unless required by subpoena or other valid legal or regulatory process, and prior written notice is provided to you so that you may challenge such disclosure, Teneo will not disclose to any third party (other than Teneo's or the Company's counsel or anyone who has executed a non-disclosure agreement with the Company) any portion of the Information so provided by the Company which constitutes confidential, proprietary or trade secret information except in furtherance of the Company's engagement hereunder.

5)    **Indemnification**. The Company shall provide indemnification and other obligations set forth in Schedule I hereto, which is an integral part hereof and is hereby incorporated by reference. Further, in the event that an Indemnified Person (as defined in Schedule I) is requested or required to appear as a witness in any action brought by or on behalf of or against the Company or which otherwise relates to this Agreement or the services rendered by Teneo hereunder, the Company shall reimburse Teneo and the Indemnified Person for all documented out-of-pocket reasonable expenses incurred by them in connection with such Indemnified Person appearing and preparing to appear as such a witness, including without limitation, the reasonable fees and disbursements of legal counsel. In addition, the Company will use commercially reasonable efforts to ensure that, to the fullest extent permitted by law, any confirmed plan of organization or other plan contains typical and customary releases (both from the Company and from applicable third parties) and exculpation provisions releasing, waiving, and forever discharging Teneo and its representatives from any losses, claims, damages, liabilities or expenses (or actions or proceedings, including those brought by security holders, creditors, or others) relating in any way to or arising in any way from this Agreement or Teneo's services under this Agreement.

6)    **Application for Retention of Teneo**. If the Company becomes a debtor under Chapter 11 of the Bankruptcy Code, the Company agrees to promptly retain Teneo as its exclusive financial advisor in the Company's bankruptcy cases and apply to the bankruptcy court having jurisdiction over such cases (the "***Bankruptcy Court***"), pursuant to section 328(a) of the Bankruptcy Code (and not subject to any other standard of review set forth in Section 330 of the Bankruptcy Code), for (a) approval of this Agreement

and (b) Teneo's retention by the Company under the terms and provisions of this Agreement (including, without limitation, the reimbursement of fees, disbursements and other charges of Teneo's counsel pursuant to Section 3 hereof without the requirement of retention of such counsel be approved by the Bankruptcy Court), *nunc pro tunc* to the date of this Agreement, and the Company shall use commercially reasonable efforts to obtain authorization of the retention of Teneo. The Company shall supply Teneo with a draft of the retention application and proposed order prior to the filing of such application and proposed order to enable Teneo and its counsel to review and comment thereon. Teneo shall have no obligation to provide any services under this Agreement if the Company becomes a debtor under the Bankruptcy Code unless Teneo's retention is approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing or petition of certiorari, which order approving the Agreement and authorizing the retention shall be acceptable to Teneo in its sole and absolute discretion.

Teneo acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section 6, payment of Teneo's fees and expenses shall be subject to (a) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code (and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code) and any order approving Teneo's retention, (b) any applicable fee and expense guidelines, orders or both and (c) any requirements governing interim and final fee applications. In the event that Teneo's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Teneo hereunder as promptly as practicable in accordance with the terms hereof and any applicable orders of the Bankruptcy Court.

In agreeing to seek Teneo's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Teneo's general restructuring experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company, that the value to the Company of Teneo's services hereunder derives in substantial part from that expertise and experience. Moreover, the actual time and commitment required by the engagement may vary substantially from week to week or month to month, creating 'peak load' issues for Teneo. Accordingly and given the numerous issues which may arise in this engagement, Teneo's commitment to the variable level of time and effort necessary to address such issues, and the market prices for Teneo's engagements of this nature, the parties agree that the fee arrangement hereunder, pursuant to Section 328(a) of the Bankruptcy Code, fairly compensates Teneo and provides certainty for the Company.

7)      **Limited Role; No Additional Services**. In performing its services pursuant to this Agreement, Teneo is not assuming any responsibility for the decision of the Company or any third party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any plan of reorganization, M&A Transaction, Financing Transaction or other transaction.

8)      **No Commitment**. It is understood and agreed that nothing contained in this Agreement would constitute an express or implied commitment by Teneo or any of its respective affiliates to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate agreement relating to the financing, and this Agreement does not constitute any representation, warranty or agreement that any transaction will be available.

**9)** <u>Use of Affiliates</u>. In connection with the services to be provided hereunder, Teneo may employ the services of its affiliates and may share with any such entity any information concerning the Company; <u>provided</u>, <u>however</u>, that Teneo and such entities shall hold any non-public information confidential in accordance with their respective customary policies relating to non-public information. Any such entity so employed shall be entitled to all of the benefits afforded to Teneo hereunder and under the indemnification provisions hereof and shall be entitled to be reimbursed for its costs and expenses on the same basis as Teneo.

**10)** <u>Entire Agreement</u>. This Agreement represents the entire Agreement between the parties and may not be modified except in writing signed by both parties. This Agreement may be executed in counterparts, each of which shall constitute an original. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision.

**11)** <u>Publicity</u>. The Company acknowledges and agrees that Teneo may, at its option and expense, place a customary "tombstone" announcement in such newspapers and periodicals as it may choose, describing its services in connection with any transaction.

**12)** <u>Governing Law and Jurisdiction</u>. This Agreement will be governed by, and construed in accordance with, the laws of the State of Florida applicable to agreements made and to be performed entirely in such state. Each of the parties hereto agrees to submit any claim or dispute arising out of or related to this Agreement to any Florida state or federal court of competent jurisdiction sitting in Miami-Dade County in the State of Florida, to whose jurisdiction each of the parties hereto hereby irrevocably submit. Nothing in this paragraph shall pertain to or affect the authority of a bankruptcy court having jurisdiction over the Company to consider and rule upon Teneo's applications for interim or final compensation pursuant to this Agreement.

**13)** <u>Other Matters</u>. If this letter correctly sets forth our Agreement on the matters covered herein, please so indicate by signing and returning the enclosed copy of this letter and signing and retaining the duplicate we are enclosing for your records. Upon execution by both parties, this letter will constitute a legally binding Agreement between the Company and Teneo.



We trust the foregoing terms and provisions are agreeable to you, and request that you sign and return the enclosed copy of this Agreement to us at your earliest convenience.

TENEO SECURITIES LLC

By: _____
By: Brent C. Williams
Title: Senior Managing Director


By: _____
By: Henry van Dyke V
Title: CEO


BIONITROGEN HOLDINGS, CORP.

By: _____
By: GRAHAM COPLEY
Title: CEO   4/25/15



### Schedule I

This Schedule I is a part of and is incorporated into that certain letter agreement (the "***Agreement***"), dated November 23, 2015 by and between BioNitrogen Holdings Corp., a Florida corporation and its respective controlled subsidiaries (collectively with any entity formed or used for the purpose set forth herein, the "***Company***"), and Teneo Securities LLC, a Delaware limited liability company ("***Teneo***"). Capitalized terms not defined herein shall have the same meaning assigned in the Agreement.

The Company shall indemnify and hold harmless Teneo and its affiliates and their respective directors, officers, employees, m e m b e r s , attorneys, other agents and consultants appointed by any of the foregoing and each other person, if any, directly or indirectly controlling Teneo or any of its affiliates (Teneo and each such person and entity being referred to as an "***Indemnified Person***"), from and against any finally determined losses, claims, damages, judgments, assessments, costs and other liabilities (collectively, "***Liabilities***"), and will reimburse each Indemnified Person for all reasonable documented fees and expenses (including the reasonable documented fees and expenses of outside counsel) (collectively, "***Expenses***") as they are incurred in investigating, preparing or defending any claim, action, proceeding or investigation, whether or not in connection with pending or threatened litigation and whether or not any Indemnified Person is a party (collectively, "***Actions***"), arising out of or in connection with advice or services rendered or to be rendered by an Indemnified Person pursuant to the Agreement, the transaction contemplated thereby or any Indemnified Persons' actions or inactions in connection with any such advice, services or transaction (the "***Services***"); provided that the Company will not be responsible for any Liabilities or Expenses of any Indemnified Person that are determined by a final judgment of a court of competent jurisdiction, which judgment is no longer subject to appeal or further review, to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct in connection with any of the advice, actions, inactions or services referred to above (other than an action or failure to act undertaken at the request or with the consent of the Company). The Company shall also reimburse such Indemnified Person for all Expenses as they are incurred in connection with enforcing such Indemnified Persons' rights under the Agreement (including without limitation its rights under this Schedule I). Such Indemnified Person shall reasonably cooperate, at the cost of the Company, with the defense of any Actions.

Upon receipt by an Indemnified Person of actual notice of an Action against such Indemnified Person with respect to which indemnity may be sought under the Agreement, such Indemnified Person shall promptly notify the Company in writing; provided, however, that failure to so notify the Company shall not relieve the Company from any liability which the Company or any other person may have on account of this indemnity or otherwise, except to the extent the Company shall have been materially prejudiced by such failure. The Company shall, upon receipt of notice, assume the defense of any such Action including the employment of counsel reasonably satisfactory to Teneo. Any Indemnified Person shall have the right to employ separate counsel in any Action and participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified

Person, unless: (i) the Company has failed promptly to assume the defense and employ counsel or (ii) the named parties to any such Action (including any impleaded parties) include such Indemnified Person and the Company, and such Indemnified Person shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided, however, that the Company shall not in such event be responsible hereunder for the fees and expenses of more than one separate counsel in connection with any Action in the same jurisdiction, in addition to any local counsel. The Company shall not be liable for any settlement of any Action effected without its written consent (which shall not be unreasonably withheld, conditioned or delayed). In addition, the Company will not, without prior written consent of Teneo (which shall not be unreasonably withheld, conditioned or delayed), settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes an unconditional release of such Indemnified Person from all liabilities arising out of such Action. The Company will not permit any such settlement, compromise, consent or termination to include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of an Indemnified Party, without such Indemnified Party's prior written consent.

If any indemnification sought by an Indemnified Person pursuant to the terms hereof is held by a court of competent jurisdiction to be unavailable for any reason or insufficient to hold such Indemnified Person harmless, then the Company and Teneo will contribute to the Liabilities and Expenses for which such indemnification is held unavailable or insufficient (1) in such proportion as is appropriate to reflect the relative benefits received (or anticipated) from the proposed transaction by the Company on the one hand and the Indemnified Person on the other, in connection with Teneo's engagement referred to above (whether or not the transaction contemplated by the engagement is consummated) or (2) if (but only if) the allocation provided in clause (1) is for any reason unenforceable, in such proportion as is appropriate to reflect not only the relative benefits received (or anticipated) from the proposed transaction by the Company on the one hand and the Indemnified Person on the other, but also the relative fault of the Company and the Indemnified Person, as well as any other relevant equitable considerations, in each case subject to the limitation that the contribution by Teneo will not exceed the amount of fees actually received by Teneo pursuant to Teneo's engagement. No person found liable for fraudulent misrepresentation shall be entitled to contribution from any person who is not also found liable for such fraudulent misrepresentation. It is hereby agreed that the relative benefit to the Company on the one hand and Teneo on the other, with respect to Teneo's engagement, shall be deemed to be in the same proportion as (1) the total value paid or proposed to be paid or received by the Company or its stockholders, as the case may be pursuant to the transaction, whether or not consummated, for which Teneo is engaged to render financial advisory services bears to (2) all fees actually received by Teneo in connection with such engagement (excluding reimbursable expenses).

No Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or the Committee for or in connection with advice or services rendered or to be rendered by any Indemnified Person pursuant to the Agreement, the transactions contemplated thereby or any Indemnified Person's actions or inactions in connection with any such advice, services or transactions except for Liabilities (and related Expenses) of the Company or the Committee that are

determined by a final judgment of a court of competent jurisdiction, which judgment is no longer subject to appeal or further review, to have resulted solely from such Indemnified Person's gross negligence or willful misconduct in connection with any such advice, actions, inactions or services (other than an action or failure to act undertaken at the request or with the consent of the Company).

These indemnification, contribution and other provisions of this Schedule I shall (i) remain operative and in full force and effect regardless of any termination of the Agreement or completion of the engagement by Teneo; (ii) inure to the benefit of any successors, assigns, heirs or personal representative of any Indemnified Person; and (iii) be in addition to any other rights that any Indemnified Person may have.