## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| BIONITROGEN HOLDINGS, CORP., *et al.*, | Case No. 15-29505-BKC-RAM |
| | Case No. 15-29507-BKC-RAM |
| Debtors. | Case No. 15-29509-BKC-RAM |
| | Case No. 15-29511-BKC-RAM |
| | Case No. 15-29512-BKC-RAM |
| | Case No. 15-29513-BKC-RAM |
| | Case No. 15-29515-BKC-RAM |
| | (Jointly Administered) |
| _____/ | |

### ANNON CONSULTING, INC.'S OMNIBUS OBJECTION TO DEBTORS' (I) MOTION TO APPROVE COMPENSATION PACKAGE OF THE COMPANY'S CHIEF EXECUTIVE OFFICER; (II) FIRST MOTION TO AUTHORIZE THE DEBTORS TO OBTAIN POSTPETITION FINANCING; (III) APPLICATION TO AUTHORIZE THE RETENTION AND EMPLOYMENT OF INVESTMENT BANKER; AND (IV) SECOND MOTION TO AUTHORIZE THE DEBTORS TO OBTAIN POSTPETITION FINANCING

Secured Creditor Annon Consulting, Inc. ("**Annon**") objects to the following four requests for relief made by the above-captioned debtors (the "**Debtors**"):

(i.) Motion to Approve Compensation Package to the Company's Chief Executive Officer *Nunc Pro Tunc* to November 23, 2015 [ECF No. 48] (the "**CEO Compensation Motion**");

(ii.) Motion to Authorize the Debtors to Obtain Postpetition Financing, *Nunc Pro Tunc* to the Date of Borrowing and to Grant the Lender a Superpriority Administrative Expense Under 11 U.S.C. § 364(c)(1) [ECF No. 51] (the "**First DIP Financing Motion**");

(iii.) Expedited Application to Employ Brent C. Williams and the Firm of Teneo Securities, LLC as Financial Advisors and Investment Bankers *Nunc Pro Tunc* to November 23, 2015 and Expedited Motion to Approve Proposed Fee Structure [ECF No. 52] (the "**Investment Banker Retention Application**"); and

(iv.) Emergency Motion to Authorize the Debtors to Obtain Postpetition Financing from Debtor BioNitrogen Plant FL Taylor, LLC and to Grant a Superpriority Administrative Expense Claim Under 11 U.S.C. Section 364(c)(1), Nunc Pro Tunc to the Date(s) of Borrowing [ECF No. 58] (the "**Second DIP Financing**

**Motion**"; together with (ii.), (the "**DIP Financing Motions**"); (i.) through (iv), collectively, the "**Motions**").

In support of this objection (the "**Objection**"), Annon respectfully states:

## I. Introduction

The notion that debtor-in-possession financing is necessary to preserve a going concern or maximize value in these chapter 11 cases is a fiction. The Debtors are not and have never been a going concern. They do not and never have had a manufacturing facility that produces urea. They do not have and never have had operations or revenues. They do not even have a working technology. The Debtors are a start-up venture with an unproven technology that the new CEO—Graham Copley—has admitted requires further engineering as the existing engineering is only half complete. Even once the design and engineering is complete, the Debtors need to build a $350 million facility to become commercially viable.

Other circumstances cast doubt that the Debtors can show entitlement to DIP financing. Neither "round" of financing was negotiated at arm's length. Mr. Copley, also a pre-petition director of and shareholder in the Debtors' ultimate parent BioNitrogen Holdings Corp. ("**BION**"), is a principal of the first DIP lender (Pentant, LLC), and as the new CEO, he controls both the borrower Debtors and second-DIP-lender, Debtor BioNitrogen Plan FL Taylor, LLC ("**Taylor**").[1] Accordingly both proposed insider DIP loans should be subject to heightened scrutiny by the Court. In contravention of the plain terms of section 364(c), neither financing was "shopped" to see whether credit could be obtained on unsecured terms. Moreover, one or both of the financings may have been funded already, eschewing the Code's requirement to "ask for permission" in favor of "begging for forgiveness" in the form of extraordinary *nunc pro tunc*

---

[1] *See* chart attached as **Exhibit** "**A**" hereto (the "**Chart**") of the Debtors' organizational and capital structure as of the petition date.

2

relief.  Indeed, although the record is unclear, the so-called "Bankruptcy Retainer" from Pentant appears to be a *pre*-petition claim.

Regardless of whether one or more of the Debtors can ultimately show entitlement to some or all of the requested debtor-in-possession financing, it is clear that no such entitlement exists as to Debtor 4A Technologies, LLC ("**4A Tech**").  As set forth more fully below,[2] Annon's indebtedness is secured by a pledge of 4A Tech's equity.  4A Tech is a special-purpose patent holding company.  Its only assets are patents.  It has never had creditors, employees, agreements or leases, operations, or revenues.  It has no need for DIP financing to fund operations or to pay employees.  As the holder of intangible property, it has no cash needs to preserve its property (with the possible exception of $1,600 already funded to pay certain patent fees in China).

Connecting the dots, the only stakeholders in these cases to benefit from the DIP financing are the legal and financial professionals and Mr. Copley.  As is shown below, this inference is confirmed by a back-of-the-envelope sources-and-uses analysis, which shows the requested insider DIP financing will be overwhelmingly used to pay professionals and Mr. Copley.  The effect – and it may be fair to say primary purpose – of styling these insider loans as DIP financing is to structurally prime Annon.  Every dollar of claims incurred by 4A Tech or secured by 4A Tech's assets diminishes the value of Annon's pledge of 4A Tech's equity.[3]  Under either the "entire fairness" or "business justification" standards, using 4A Tech's assets for the speculative benefit of creditors of the other Debtors cannot pass muster.

---

[2]   *See also* Chart.

[3]   Contemporaneously with the filing of this Objection, Annon is filing a motion for relief from stay pursuant to section 362(d)(1) and a request for adequate protection pursuant to section 363(e).

For the same reasons, Annon objects to the CEO Compensation Motion and the Investment Banker Retention Application to the extent the Debtors seek to have any debtor entity other than BION retain or be obligated for the fees, expenses and other amounts proposed to be due to Mr. Copley or the investment banker.

**II.    Facts**

A.    The Debtors

On November 3, 2015 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

The Debtors are debtors in possession within the meaning of section 1107(a) of the Bankruptcy Code.

No trustee, examiner or creditors' committee have been appointed as of the date of filing of the Objection.

B.    Annon's Loan and Judgment

Approximately two years before the Petition Date, Annon made a bridge loan in the principal amount of $845,000.00 (the "**Loan**") to BION, the Debtors' ultimate parent and a public company.[4] The Loan provided for 30% contract rate interest and 32% default rate interest pursuant to the laws of Ontario. It was guaranteed by Bio-SNG Technologies International Corp. ("**Bio-SNG**") and certain other Debtors.[5] It was collateralized by a security interest in all the assets of BION,[6] and by a pledge of Bio-SNG's 100% membership interest in 4A Tech (the

---

[4]   A true and correct copy of the Secured Loan Agreement, dated as of December 16, 2013, between BION and Annon is attached as **Exhibit** "**B**" hereto.

[5]   A true and correct copy of the Guaranty, dated as of December 16, 2013, between Bio-SNG, certain other Debtors and non-debtors, and Annon is attached as **Exhibit** "**C**" hereto.

[6]   A true and correct copy of the Security Agreement, dated as of December 16, 2013, between BION and Annon is attached as **Exhibit** "**D**" hereto.

4

"**Pledge**").[7] The security interest and pledge were perfected by the filing of UCC-1s.[8] This capital structure is shown in the attached Chart.

In making the Loan, Annon relied on the separateness of 4A Tech from the Debtors, and it relied on the value of the patents unencumbered by any claims against 4A Tech or liens against the patents. This reliance is evidenced, *inter alia*, by provisions of the Pledge Agreement that (i) the patents were free and clear of all liens, claims and encumbrances,[9] (ii) the patents will not be transferred or become subject to any security interest or lien,[10] (iii) 4A Tech's organizational documents will not be materially amended,[11] and (iv) the patents were the only assets of 4A Tech.[12]

Thus, upon a sale of 4A Tech's patents, the proceeds must first be used to pay the full amount of Annon's indebtedness before the net proceeds can be further "upstreamed" to pay claims of creditors of the other Debtors. Annon specifically bargained for this benefit and protection.

The term of the Loan was approximately six months, and a maturity default occurred when the Debtors failed to pay the Loan after it matured on June 30, 2014. Annon commenced a suit in the United States District Court for the Southern District of Florida for repayment of the Loan, enforcement of the guaranty and foreclosure of its security interests and the Pledge.[13] The

---

[7] A true and correct copy of the Pledge Agreement, dated as of December 16, 2013, between Bio-SNG and Annon is attached as **Exhibit** "**E**" hereto (the "**Pledge Agreement**").

[8] True and correct copies of the UCC-1s are attached as **Composite Exhibit** "**F**" hereto.

[9] Pledge Agreement § 3(b)(i).

[10] *Id.* § 3(b)(iii).

[11] *Id.* § 3(h).

[12] *Id.* § 3(j).

[13] *See Annon Consulting, Inc. v. BioNitrogen Holdings Corp., et al.*, No. 9:15-cv-80088-KLR (S.D. Fla.) (the "**Foreclosure Action**"). A copy of the Complaint (without exhibits) in that action is attached as **Exhibit** "**G**" hereto.

defendants defaulted in that action. In denying their motion to vacate clerk's default and in granting Annon's motion for default judgment, the district judge found:

- The defendants were aware of the defaults, were aware of the consequences of a potential default judgment, and purposely failed to answer the complaint.[14]
- The defendants could not show "excusable neglect" for the defaults.[15]
- The defendants did not have any meritorious defense, including that they had no usury defense.[16]

Accordingly, the district court entered final default judgment.[17] The Judgment provides, *inter alia*:

- judgment in favor of Annon in the amount of $1,188,112.12, plus $741.00 per diem against BioNitrogen, Bio-SNG and other guarantors;[18]
- judgment in favor of Annon and against BION entitling Annon to foreclose on its security interest in BION's assets;[19]
- judgment in favor of Annon and against Bio-SNG and 4A Tech entitling Annon to foreclose on Bio-SNG's 100% membership interest in 4A Tech;[20] and
- judgment in favor of Annon entitling it to reasonable costs and attorney's fees incurred in the Foreclosure Action.[21]

As of the Petition Date, the amount owed to Annon under the Judgment for principal interest was $1,339,276.12, plus reasonable costs and attorney's fees and any other amounts due under the Judgment.

---

[14] *See* Foreclosure Action, *Order Denying Amended Motion to Set Aside Clerk's Default*, dated September 15, 2015 [ECF No. 35],at 4-5, a copy of which is attached as **Exhibit** "**H**" hereto ("**Order Denying Motion to Set Aside Clerk's Default**").

[15] *See id.* at 4 & 6

[16] *See id.* at 7; Foreclosure Action, *Order Granting Motion for Final Default Judgment*, dated October 21, 2015 [ECF No. 40], at 4, a copy of which is attached as **Exhibit** "**I**" hereto.

[17] *See* Foreclosure Action, *Final Default Judgment*, dated October 21, 2015 [ECF No. 41] (the "**Judgment**"), a copy of which is attached as **Exhibit** "**J**" hereto.

[18] *Id.* ¶ 1.

[19] *Id.* ¶ 2.

[20] *Id.* ¶ 3.

[21] *Id.* ¶ 5.

C.     The Debtors' Pre-Petition Business and Status as of the Petition Date

The Debtors are a start-up technology company. Using technology set forth in the patents owned by 4A Tech, they propose to use biomass to create urea—a fertilizer. They have not, however, completed the engineering necessary to turn the theory of 4A Tech's patents into commercial reality. The Debtors have never produced commercially viable quantities of urea. Mr. Copley has indicated that substantial design and engineering services are required to finish turning the processes covered by the patents into a commercial technology and that the Debtors are only one-half through to a final design. Even once the design and engineering is complete, a $350 million facility must be built to commence production of urea in a commercially viable manner.

As of the Petition Date, only BION purported to have "operations."[22] None of the other Debtors, including 4A Tech and Bio-SNG, have any operations and are "inactive."[23] As the Debtors' Schedules and SOFAs show, and as summarized in the Chart, 4A Tech does not have any creditors, any employees, any officers or directors, any executory contracts or unexpired leases, revenues, or any claim, encumbrance or obligation.[24] Its only assets are patents.[25] As of the Petition Date, the first economic stakeholder in the patents is Annon on account of the Pledge.

Although jointly administered, the Debtors are not substantially consolidated. Nor does any basis exist to substantially consolidate 4A Tech with any other Debtor because, *inter alia*, Annon relied on its separate credit in making the Loan.

---

[22]   *See* Case Management Report [ECF No. 11] at 2 ("Currently the Joint Debtors only operations are through BION.").

[23]   *Id.* ("All other entities are inactive.").

[24]   *See* [Case No. 15-29509-RAM; ECF No. 19.]

[25]   *See id.*

**III.    Objection**

A.    <u>The DIP Financing Motions should be denied</u>.

In determining whether to approve debtor-in-possession financing under section 364(c), courts will often examine the following four factors:

(i.)    Whether the debtor is unable to obtain unsecured credit under 11 U.S.C. § 364(b);

(ii.)    Whether the credit transaction is necessary to preserve the assets of the estate;

(iii.)    Whether the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender; and

(iv.)    Whether the financing agreement was negotiated in good faith and at arm's length between the debtor, on the one hand, and the lender, on the other hand.

*See In re Phase-I Molecular Toxicology Inc.*, 285 B.R. 494, 496 (Bankr. D.N.M. 2002); *In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987).

A debtor's decision to accept financing is not entitled to deference where the directors are not disinterested or independent. *See In re Los Angeles Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) (the business judgment rule does not apply where any one of four conditions exist: "(1) the directors did not in fact make a decision, (2) the directors' decision was uninformed; (3) the directors were not disinterested or independent; or (4) the directors were grossly negligent"). In such circumstances, the request for DIP financing must be reviewed under the "entire fairness standard," requiring "proof of fair dealing and fair price and terms." *Id.*

Courts have denied requests for DIP financing in a variety of circumstances. *See Los Angeles Dodgers*, 457 B.R. at 313-14 (denying DIP financing where director was not disinterested and credit was available under section 364(b)); *In re Berry Good, LLC*, 400 B.R. 741, 747 (Bankr. D. Ariz. 2008) (denying DIP financing because "bankruptcy courts do not

8

allow terms in financing arrangements which convert the bankruptcy process from one designed to benefit all creditors to one designed for the unwarranted benefit of the post-petition lender); *Phase-I Molecular Toxicology*, 285 B.R. at 496 (denying DIP financing where proposed DIP lender was debtor's largest shareholder and a pre-petition secured creditor, and debtor did not seek alternative financing sources pre-petition); *In re St. Mary Hosp.*, 86 B.R. 393, 402 (Bankr. E.D. Pa. 1998) (denying DIP financing from debtor's parent where parent dominated the debtor and tailored the debtor's purported emergency for the parent's economic benefit); *Crouse Grp.*, 71 B.R. at 549 (denying DIP financing absent showing of benefit to the estate)

Here, the DIP Financing Motions fail in multiple ways:

- The proposed DIP financing was not negotiated at arm's length, and Mr. Copley was not disinterested as to either transaction.

- Unsecured credit pursuant to the terms of section 364(b) was not sought.

- The primary purpose of the DIP financing is to pay professionals and Mr. Copley.

- The DIP financing does not preserve a going-concern or maximize value of assets. The Debtors are not a going-concern and the only assets are intangible. Those patent assets require substantial further engineering to turn the theory of the technology into commercial reality.

- The incurrence of post-petition claims against 4A Tech and liens against its assets provides no benefit to 4A Tech.  Any benefit, if any, is to the other Debtors.

- The superpriority claims against 4A Tech and liens against 4A Tech's patents diminish the value of Annon's Pledge without providing adequate protection.

- In shifting the risk and expense of failure from BION's professionals and Mr. Copley to Annon, the proposed financing provides unwarranted benefits to one set of stakeholders—the professionals—at the unfair expense of another stakeholder—Annon.

Analyzing the ostensible versus likely use of the proposed DIP financing is instructive. The Debtors claim to have monthly expenses in the amount of $14,975.28.  This number is inflated.  There are no D&O premiums due after the November premium (payment of which has

already been authorized by the Court), bringing the monthly total to approximately $11,000.[26] By contrast, the professional and insider fees are at least $32,000 a month. They are comprised of $12,000 per month to Mr. Copley (this is just the so-called "Weekly 60" and does not included the "Deferred 40" or Mr. Copley's "success fee"), $10,000 per month to the investment banker, and monthly attorneys' fees for Debtors' counsel (which can be assumed to be on the same order of magnitude). Thus, the use of the proposed DIP financing is at least three-to-one in favor of professionals and Mr. Copley. Tellingly, no budget was included with either DIP financing request.

In addition, securing a pre-petition claim with post-petition collateral or superpriority administrative expense is not permitted in the Eleventh Circuit. *See Matter of Saybrook Mfg. Co., Inc.*, 963 F.2d 1490, 1495 (11th Cir. 1992) ("By their express terms, sections 364(c) & (d) apply only to future-i.e., post-petition-extensions of credit. They do not authorize the granting of liens to secure pre-petition loans."). Based on Debtors' counsel's retention application, the Bankruptcy Retainer is a pre-petition claim.[27] Accordingly, it is not entitled to any relief under section 364(c).

Finally, the second DIP loan of approximately $126,000 from lender-Debtor BioNitrogen Plan FL Taylor, LLC ("**Taylor**") is not fair to Taylor's estate. It – according to the Schedules[28] –

---

[26] This amount also contains questionable expenses for rent and Mr. Pedroza's salary. BION's sublease appears to serve no purpose as Mr. Copley primarily works from Connecticut and the Case Management Summary lists only $1,000 in furniture and office supplies held in that space. *See* Case Management Summary [ECF No. 11] at 5. Although Mr. Pedroza is apparently a current employee of BION, he acknowledged at the 341 meeting that he had not been paid in four or more months before the Petition Date, that he is a shareholder of BION, and that he has been paying his personal expenses through other work.

[27] *See* retention application [ECF No. 10] at 14 ("Pre-petition, BION paid ECC $10,000.00 for legal work performed prior to the Petition Date. As a bankruptcy retainer, BION provided $56,000.00, of which $12,019.00 was used to pay for filing fees. The balance of $43,981.00 remains in trust to be applied to Chapter 11 fees and costs (the "Bankruptcy Retainer")."). *See also* BION's SOFA [ECF No.39] at 29 (showing $43,981.00 funded on November 2, 2015 – before the Petition Date – by Pentant, LLC).

[28] [Case No. 15-29515-RAM; ECF No. 23.]

10

has only three creditors all of whom are scheduled as unsecured and not disputed, not contingent, and liquidated: Community & Southern Bank in the amount of $4,350,000; Taylor County Development in the amount of $50,000, and Kimley-Horn and Associates, Inc. in the amount of $2008.98.  Thus, the bank holds 98.82% of the claims against Taylor's estate. It has no claims against any other estate.  Its only potential source of repayment is from Taylor's estate.

Converting Taylor's *cash* into *claims* against other Debtors has no apparent benefit to Taylor or the bank, Taylor's 99% and far-and-away largest creditor.  The loan is not proposed to be used for Taylor's benefit (indeed there would be no need for DIP financing to use Taylor's funds in Taylor's case).  These problems are compounded by the fact that the Debtors are not going forward with building a facility at Taylor.  Taylor is at the bottom of the Debtors' capital structure, and it is structurally subordinated to, *inter alia*, $9.6 million in claims scheduled against Debtor BioNitrogen Florida Holdings, LLC.  Even if the professional's efforts yield a sale of the patents or a refinancing the benefits of those speculative transactions are unlikely to trickle down to Taylor.

In sum, the Debtors have failed to show even one of the four factors in support of the DIP Financing Motions, and the motions should be denied in light of this failure.

B.     Teneo's retention and Mr. Copley's compensation should not be approved with
       <u>respect to any of the Debtors other than BION</u>.

Pre-petition the Debtors' *modus operandi* was to have BION employ its officers and its financial and consulting professionals, not the other Debtors.  This is evident from the Schedules and SOFAs, which show claims against BION by Mr. Contreras (former CEO), Mr. Iznaga (the once and presumed future head of operations and design), Pentant (Mr. Copley's private equity / consulting firm), and other financial and accounting professional firms, but no such

claims are scheduled against any other Debtor. This is also evident in the Case Management Summary, which described all the Debtors but BION as "inactive."

Moreover, as to 4A Tech, retention of Teneo or payment of Mr. Copley's compensation has no benefit. 4A Tech has no creditors. Any of Teneo or Mr. Copley's efforts are for the benefit (if any) of the creditors of BION and / or other Debtors. There is no justification – in either its pre-petition past or post-petition present – for 4A Tech to incur obligations to Teneo or Mr. Copley. Having managed to keep their "eggs unscrambled" throughout their pre-petition existence, the Debtors should not now – in a chapter 11 case – be allowed to "scramble the eggs" for the benefit of Teneo or Mr. Copley.

Further it is clear the Mr. Copley's retention is not in the ordinary course. A transaction is in the ordinary course when "from an industry-wide perspective, the transaction is of the sort ***commonly*** undertaken by companies in that industry" ***and*** from the perspective of "the reasonable expectations of a hypothetical creditor," the transaction is one "the debtor in possession is ***likely*** to enter in the course of its business." *In re HMH Motor Servs., Inc.*, 259 B.R. 440, 449 (Bankr. S.D. Ga. 2000) (emphasis added). Here, there is no evidence that the employment of a new CEO during a chapter 11 case is common in the Debtors' industry or likely in the Debtors' historical conduct of its business. Experience suggests the ouster of a CEO and hiring of a replacement is not something that occurs daily or even yearly, and hardly can be described as "common" or "likely." All the circumstances point to the fact Mr. Copley's retention is unusual and unique.

Thus, Mr. Copley's retention must pass both sections 363(b) and 503(c)(3). Section 503(c)(3) imposes a test stricter than the business judgment test. *See* 4-503 Collier on Bankruptcy P 503.17[4] (16th Ed.) (citing *In re Pilgrim's Pride Corp.*, 401 B.R. 229, 236-37

(Bankr. N.D. Tex. 2009)).  Here, moreover, the Court should not apply the deferential business judgment test even to authorization under section 363(b) since BION's transaction with Mr. Copley is an insider transaction.  Under this stricter standard, the facts and circumstances do not justify the relief sought in the CEO Compensation Motion.  There is no showing that:

- the cost of Mr. Copley's compensation is reasonable in relation to the value of the Debtors' assets, liabilities or earning potential;
- the compensation does not discriminate unfairly in favor of Mr. Copley;
- the compensation is consistent with industry standards; or
- the Debtors conducted diligence to determine the need for the incentives.

*See* 4-503 Collier on Bankruptcy P 503.17[4] (16th ed.).

Finally, Teneo's Completion Fee should not be approved.  The value-based compensation provided for Teneo pursuant to the M&A Transaction Fee or the Financing Fee compensates Teneo for the services set forth in paragraph (1)(a) through (j) of its engagement letter.  An additional flat fee of $200,000 for confirmation of a plan is unreasonable.

**WHEREFORE**, Annon respectfully requests the entry of an Order sustaining the Objection and denying the Motions.

Dated: December 15, 2015

Respectfully submitted,

GREENBERG TAURIG, P.A.

 */s/ John R. Dodd*
John B. Hutton, III
Florida Bar No. 902160
huttonj@gtlaw.com
John R. Dodd
Florida Bar No. 38091
doddj@gtlaw.com
333 S.E. 2nd Avenue Ste 4400
Miami, FL 33131
Telephone: 305-579-0500
Facsimile: 305-579-0717

*Counsel to Annon Consulting, Inc.*