**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

*In re:*

BIONITROGEN HOLDINGS, CORP., et. al    Chapter 11

                Case No.: 15-29505-BKC-RAM
                Case No.: 15-29507-BKC-RAM
                Case No.: 15-29509-BKC-RAM
                Case No.: 15-29511-BKC-RAM
                Case No.: 15-29512-BKC-RAM
                Case No.: 15-29513-BKC-RAM
                Case No.: 15-29515-BKC-RAM

      Debtor.      /    (Jointly Administered)

**DEBTORS' SECOND MOTION FOR ENTRY**
**OF AN ORDER EXTENDING THE EXCLUSIVE PERIODS**
**TO FILE A PLAN OF REORGANIZATION AND SOLICIT ACCEPTANCES**

BIONITROGEN HOLDINGS, CORP, *et al.* (collectively referred to as "BioN" or the "Debtor") by and through undersigned counsel and pursuant to 11 U.S.C. §1121 moves this Court, pursuant to sections 105(a) and 1121(d)(1) of the United States Code, 11 U.S.C. §§ 101 *et seq.* for entry of an order: (a) extending the period during which the Debtors have the exclusive right to file a Chapter 11 plan and disclosure statement (the "Exclusive Filing Period"); and (b) extending the period during which the Debtors have the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period," and together with the Exclusive Filing Period, the "Exclusivity"), (the "Motion"), and in support of this Motion states as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. §§ 157(b).

2. The statutory predicates in support of the relief requested herein are Sections 105(a) and 1121(d)(1) of the Bankruptcy Code.

## BACKGRDOUND

3. On November 3, 2015 (the "Petition Date"), the above-captioned Debtor each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. As of November 5, 2015, all cases are being jointly administered pursuant to this Court's *Order Granting Ex-Parte Motion for Order Authorizing and Directing the Joint Administration of Related Chapter 11 Cases* [ECF# 8] under the lead case "BioNitrogen Holdings, Corp.", Case No.: 15-29505-BKC-RAM.

5. The Debtor are operating their business and managing their affairs as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

6. No trustee, examiner, or statutory committee has been appointed in these cases.

7. The Debtors own valuable, patented and proprietary technology of two different types (the "Biomass IP"). The first allows the holder of the technology to build environmentally friendly plants that utilize and convert residual agricultural waste and other biomass materials into urea fertilizer. Urea is principally used in the agricultural industry as a crop fertilizer (the "Biomass Initiative"). This technology allows for the urea plant to be located where both biomass is abundant (and problematic) and urea is demanded for agricultural production. The second allows the holder of the technology to convert 'stranded natural gas' into urea fertilizer

(the "Stranded Natural Gas Initiative").  Stranded natural gas is defined as gas that is unable to be transported to end users due to a lack of necessary infrastructure currently in place at the well site (i.e. pipeline). Stranded natural gas is most often burned off by employing a flame at the top of the oil drilling equipment or derrick, resulting in carbon emissions and the waste of a natural resource.  Both processes would permit the Debtor to then sell high quality urea fertilizer on a retail or wholesale basis, while at the same time addressing two environmental hazards: the accumulation and potential burning of agricultural waste and the flaring of natural gas.  The Stranded Natural Gas Initiative, however, is particularly exciting because the Debtor' technology is so compact as to be portable, and can actually be transported to oil and gas exploration sites, capture the stranded natural gas for conversion to urea fertilizer, and when the well has been completely utilized, the stranded natural gas manufacturing facility can simply be towed to another well.

8. The § 341 Meeting of Creditors was held and concluded on Monday, November 30, 2015 at 2:30 p.m. [ECF #7, 9 and 77].

9. Pursuant to Section 1121(b), the original Exclusive Filing Period was set to expire on Wednesday, March 2, 2016.

10. On March 26, 2016, the Court entered an Order [ECF #139] which granted the Debtor's first motion to extend the Exclusive Filing Period and Exclusive Solicitation Period (the "First Exclusivity Motion") [ECF #124] and extended: (a) the Exclusive Filing Period through and including May 24, 2016 and (b) the Exclusive Solicitation Period[1] through and including July 24, 2016.

11. The Court entered its *Order Granting Debtor's Expedited Application for Entry of an Order: (I) Authorizing the Retention and Employment of Brent Williams and the Firm of*

---

[1] Any capitalized terms not defined herein have the meaning ascribed to them in the First Extension Motion.

*Teneo Securities, LLC, As Financial Advisors and Investment Bankers to the Debtors Nunc Pro Tunc to November 23, 2015; And (II) Approving Proposed Fee Structure* [ECF #25]. Teneo Securities, LLC ("Teneo"), along with Debtor's management team (comprised principally of Graham Copley (the Debtor's CEO) and Lillian Ruiz of Pentant, LLC, and hereinafter referred to as "Management") have been hard at work contacting a variety of investors and potential purchasers.

12. In the First Exclusivity Motion, the Debtor summarized all of the Debtor's marketing and investment banking activities that had taken place to date. In addition to the activity detailed therein as well as at the hearing to consider the First Exclusivity Motion, the Debtor and Teneo have since significantly augmented the marketing program. Those efforts have resulted in the opportunity to form a strategic alliance with a municipality and engage in deeper and more substantive discussions with potential strategic partners.

## MARKETING PROCESS TO DATE

13. The following timeline summarizes the Debtor's activities and benchmarks achieved since the Petition Date:

| | |
|---|---|
| **Mid – Late December 2015** | Preparation of teaser letter and Confidential Information Memorandum for the Biomass IP. |
| **Early January 2016** | Went to market with the Biomass IP opportunity. At the time, BioN had selected neither a land site nor a supporting municipal partner. Thus, the offering did not include an available bond allocation or partnership with a municipality. 78 Biomass investors (44 private equity / 18 venture capital / 16 strategic) were contacted and provided a Biomass investment teaser, in addition to follow-up actions. |
| **Early February 2016** | Went to market with the Stranded Natural Gas IP opportunity. Given that the relevance of the Biomass |

4

| | |
|---|---|
| | IP had been recently identified by Management in December 2015, the initial technical feasibility and associated business model was completed late January 2016, precluding an early contact effort. |
| **January 2016 to Date** | Numerous meetings and calls have taken place with potential strategic and financial partners. |
| **Early March 2016** | Based on feedback from both potential strategic and financial partners, it was apparent that greater visibility on a land site and associated construction funding sources were needed to effectively market the Biomass IP. Discussions commenced with the City of Perry, Florida on a potential agreement for the development and construction of a plant in Taylor County ("Biomass Facility"). |
| **Early April 2016** | Marketing material including an updated teaser and company press release were sent to potential financial and strategic partners/investors., essentially re-marketing the Biomass IP given the positive developments with the City of Perry and greater potential scale of the opportunity.<br><br>72 Biomass investors were contacted, of which 52 had been originally contacted along with 20 new investor were contacted, of which 52 had been originally contacted along with 20 new investor contacts. |
| **April 12, 2016** | Settlement Agreement reached with City of Perry, Florida (detailed below). |

## RESTRUCTURING STRATEGY

14. In addition to obtaining an exit facility or transacting an asset sale in order to fund the payment of allowed claims and expenses associated with emerging from Chapter 11, the Debtor is actively pursuing the following restructuring strategy, designed to fund the construction of a Biomass Facility:

5

a. **Partnership with a Strategically Located Municipality** – Effective April 12, 2016, BioN has negotiated a settlement agreement with the City of Perry, Taylor County Florida. The settlement agreement is subject to court approval pursuant to a Motion to approve the settlement agreement under Federal Rule of Bankruptcy Procedure 9019 that has been filed with the Court [ECF # 152 ] and is pending hearing on May 24, 2016. The agreement provides significant benefits to BioN, its creditors and to Perry, Florida and Taylor Country. Key details are as follows:

   i. **Perry Claim:** Perry will be allowed a general unsecured claim of $3.07 million. 20% of the allowed claim will be paid on the effective date of a Chapter 11 plan. The remaining amount of the claim will be paid upon obtaining financing in full for the development and construction of the Biomass Facility. Perry will also receive a royalty payment on a per urea tonnage basis.
   ii. **Landsite Identification:** The City of Perry agrees to assist the current Debtors and Newco in the identification and acquisition of an appropriate land site for construction.
   iii. **Bond Allocation:** The City of Perry will take all required reasonable measures to secure a commitment of existing State of Florida bond allocations to the development and construction of the Biomass Facility, up to $300 million.
   iv. **Exclusivity on the Construction of the First Biomass Facility:** In consideration for the settlement terms, the Newco[2] agrees to grant Taylor Country exclusivity on the construction of the first Biomass Facility.

b. **Alliance With Strategic Partner** – BioN is engaged in advanced negotiations with a strategic partner. It is envisioned that this partner will assist in the following areas:

   i. Assist in the costing and monitoring of engineering, procurement and construction services from third parties;
   ii. Serve as a customer of certain by-products; and

---

[2] The term "Newco" refers to the Debtor, Reorganized Debtor, or other entity in such form that retains the Biomass IP and the Debtor's principal assets pursuant to a confirmed Chapter 11 plan.

      iii. Provide additional assurances regarding technical feasibility to potential investors and/or lenders.

  c. **Financial Sponsor or Acquirer** – BioN is actively seeking a financial sponsor or acquirer to provide the funding associated the construction of the Biomass Facility in Perry, Florida. The financial party would be in partnership with a strategic partner (as noted above) and could also be the provider of the exit facility. It is anticipated that 80% of construction costs will be generated from government tax advantaged bonds with the remaining 20% generated from the financial sponsor(s).

## CURRENT STATUS AND NEXT STEPS

15. When the Court approved the First Exclusivity Motion, the discussions with City of Perry were in their infancy. At that time, potential investors were unaware of a potential agreement with a municipality with the potential availability of up to $300 million bond allocation for the development and building the first Biomass Facility.

16. Since then, BioN has finalized its negotiations with Perry. Perry's city council has unanimously approved and ratified the terms of a settlement agreement and the Debtor has filed a motion to approve the settlement agreement by and between the Debtor and the City of Perry.

17. The settlement with the City of Perry has resulted in a significant increase in the level of interest in the Biomass IP and has facilitated fulsome and material discussions with potential investors.

18. Over the last 3 weeks, given the significant development with the City of Perry, Management and Teneo have re-focused the marketing campaign. To date, 10 Biomass Investors (7 private equity / 3 strategic) have had a call or meeting with Management; 5 Biomass

Investors (3 private equity / 2 strategic) have executed non-disclosure agreements to commence due diligence, 59 potential Stranded Natural Gas Investors were also contacted.

19. Interest has increased in the Biomass opportunity given the positive developments with the City of Perry, which provides a roadmap for emerging from Chapter; Resolves the claim of a large creditor, and helps provide assurance to financial investors as to the feasibility of the venture.

20. Given the new visibility on funds needed to emerge from Chapter 11 (exit facility) and the increased scale of the opportunity, now that the potential for building the first Biomass Facility has materially developed, investors that would have viewed the initial opportunity as too small and too speculative can now be reached.

21. Dialogue with potential investors is on-going and will be enhanced by the finalization of an agreement with a strategic partner. To that end, BioN is engaged in advanced discussions with potential strategic partners and anticipates that a partner will be selected in the next 2 to 4 weeks.

22. The Debtor remains confident in the successful outcome of its restructuring, investment, and sale efforts. More importantly, the Debtor believes that its agreement with the City of Perry will become the catalyst to the negotiation and formation of further economic and strategic alliances that will enable the Debtor to emerge from Chapter 11 and develop the first Biomass Facility.

### **RELIEF REQUESTED AND BASIS THEREFORE**

23. By this Motion, the Debtor seek the entry of an order: (a) extending the Exclusive Filing Period and the Exclusive Solicitation Period by ninety (90) days, so that the Exclusive

Filing Period would expire on August 24, 2016 and the Exclusive Solicitation Period on October 24, 2016. This is the second request by the Debtor.

24. Pursuant to section 1121(b) of the Bankruptcy Code, a debtor has the exclusive right to file a Chapter 11 plan in the first 120 days following the commencement of a chapter 11 case. If a debtor files a plan during this exclusive filing period, section 1121(c)(3) of the Bankruptcy Code grants an additional 60 days during which the debtor may solicit acceptances of that plan and no other party in interest may file a competing plan.

25. Section 1121(d) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d)(1). The 120-day period, however, "may not be extended beyond a date that is 18 months after the [petition] date" and the 180-day period "may not be extended beyond a date that is 20 months after the [petition] date." 11 U.S.C. § 1121(d)(2). The ultimate decision to extend a debtor's exclusivity periods rests within the discretion of the Bankruptcy Court. *See First American Bank of N.Y. v. S.W. Gloves and Safety Equip., Inc.,* 64 B.R. 963, 965-66 (D. Del. 1986) (finding the authority to extend debtor's exclusivity within the discretion of the bankruptcy court).

26. While the Bankruptcy Code fails to define "cause," courts rely on various, non-exclusive factors to determine whether cause exists to extend a debtor's exclusivity periods. These factors include: (a) the size and complexity of the debtor's case; (b) the existence of good faith progress towards reorganization; (c) a finding that the debtor is not seeking to extend exclusivity to pressure creditors "to accede to [the Debtor's] reorganization demands"; (d) whether the debtor has demonstrated reasonable prospects for filing a viable plan; and (e) whether the debtor has progressed in negotiations with creditors. *See In re Express One Int'l Inc.*,

9

194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (listing the above factors); see also *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. S.D. Ga. 2005) (listing the above factors and additional factors); *In re Grand Traverse Dev. Co. Ltd. Partn.*, 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992) (listing some of the above factors); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (listing some of the above factors); *In re Borders Group, Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (listing nine factors a court may consider in extending exclusivity).

## CAUSE EXISTS FOR THE EXTENSION OF EXCLUSIVITY

27. Based upon the articulated and non-exclusive set of factors enumerated by various courts as cited above, the Debtors believe a further extension of Exclusivity is warranted in this case.

28. While the size of this case is not large, the intellectual property that is the primary asset in these cases is of a complex, scientific and technical nature, requiring technical expertise by Management in order to explore various investment opportunities with sophisticated strategic and financial investors who are familiar with so-called "clean-tech" technology. Similarly, deep industry expertise is required by Teneo and its investment banking team for the same reasons. Negotiating and exploring the possible investment or sale of this technology is not the same as exploring investment and sale opportunities for more commoditized businesses in the retail and wholesale sectors who may sell items such as furniture or clothing, or even fuel.

29. Based on the Debtor's explanation of efforts to date and the significant advances made to date, particularly as it relates to the City of Perry deal, the Debtor submits that its efforts thus far have been in good faith, and in the best interests of creditors to maximize value to the estate.

30. The factor of whether the Debtor is seeking to extend Exclusivity to pressure creditors "to accede to [the Debtor's] reorganization demands," is not applicable at this stage as the Debtor has demonstrated that it is truly exploring all avenues for exit from these Chapter 11 case and is not yet negotiating the terms of a plan with creditors.

31. Based on the value of the technology, the potential for building the Biomass Facility and the interest that such prospect has engendered, the Debtor believes there is more than a reasonable prospect for the filing of a viable plan in these cases.

32. Under the circumstances of what all involved agree is a somewhat unique case, the Debtor believes the request for extension is reasonable given the Debtor's progress to date and the current posture of the cases. The Debtor is not seeking an extension as a delay tactic. The extension sought is without prejudice to the rights of the Debtor to seek further extensions of Exclusivity.

33. As demonstrated in this Motion, the Debtor's request for an extension of Exclusivity is not for purposes of delay, but out of the Debtor's legitimate need for an extension of time in which to complete the investment banking process, then draft and file a confirmable plan and to resolve outstanding issues with creditors. The Debtor submits that the relief requested in this Motion is appropriate, is an exercise of the Debtor's sound business judgment, is in the best interest of the estate, and should be granted as requested herein.

34. **Certification of good faith conference:** On April 30, 2016, undersigned counsel forwarded a draft of this Motion to: (i) the Office of the United States Trustee; (ii) Counsel for Annon; and (iii) Counsel for the City of Perry prior to filing. The Office of the U.S. Trustee advised that it would not be in a position to review the Motion prior to the May 2nd deadline to file; Counsel for the City of Perry advised that City of Perry's representative was away from the

jurisdiction and unavailable for consultation prior to May 2nd; and Annon advised that it does not consent to the extension of Exclusivity sought herein.

**WHEREFORE,** the Debtor seeks an Order of this Court: (a) extending the period during which the Debtors have the exclusive right to file a Chapter 11 plan and disclosure statement through and including August 24, 2016; (b) extending the period during which the Debtors have the exclusive right to solicit acceptances thereof, through and including October 24, 2016; and (c) granting any further relief as the Court may deem equitable and appropriate.

**I HEREBY CERTIFY that a true and correct copy herein was served electronically upon all interested parties entitled to notice via CM/ECF on May 2, 2016.**

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am qualified to practice in this Court as set forth in Local Rule 2090-1(A).*

<div style="margin-left:3em">

EHRENSTEIN CHARBONNEAU CALDERIN
*Counsel for the Debtor in Possession*
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
T. 305.722.2002     F. 305.722.2001
www.ecclegal.com

By:   */s/ Jacqueline Calderin, Esq.*
        Jacqueline Calderin, Esq.
        Florida Bar No: 134414
        jc@ecclegal.com

</div>

12